## STATE, RESPONDENT, *v.* VINEYARD, APPELLANT.

[Submitted April 29, 1895.   Decided May 6, 1895.]

FORGERY—*Evidence.*—In the case at bar it appeared that defendant and one H. T. Swenson were lessees of a mine, working it under an agreement between themselves that all the ore should be shipped in the name of said S.; that defendant, after delivering certain ore and receiving a check therefor in the name of H. J. Swanson, inquired of S. what his initials were, and, upon being told, said that he had made a mistake and given them as " H. J;" that S. then told him it was no matter as he (S.) could get the check cashed; that defendant without authority, and permitting himself to be identified as the payee, endorsed the check, cashed it and retained the money. *Held,* that the facts were sufficient to sustain a conviction for forgery.

SAME—It is forgery to sign a money order or check of apparent legal efficiency in an assumed name, if the name was assumed to defraud the person to whom the order or check is given, or if under such circumstances as are likely to defraud.

*Appeal from Second Judicial District, Silver Bow County.*

CONVICTION for forgery.  Defendant was tried before SPEER, J.  Affirmed.

*Miles Cavanaugh* and *L. C. Campbell,* for Appellant.

*Henri J. Haskell,* Attorney General, and *Ella L. Knowles,* for the state, Respondent.

A person commits forgery who, personating another, fraudulently, writes his name.   (Bishop's Criminal Law, Vol. 2, § 585.)   Where a check comes into the hands of a person, who knows that it is not intended for him and that person endorses it with the fraudulent purpose of getting the money, he is guilty of forgery.   (*United States* v. *Long,* 30 Fed. 678–80; *Rauch* v. *State,* 51 N. W. (Neb.) 755; Bishop Crim. Law, Vol. 2, § 587.)   The fact that the name forged is misspelled makes no difference.   (*Rudical* v. *State,* 13 N. E. 114, S. C. 111 Ind. 595; Bishop's Crim. Law, Vol. 2, § 593; *State* v. *Covington,* 94 N. C. 913; A. & E. Encly. Law, Vol. 8, page 462.)   From the intent to pass as good, the law draws the conclusion of the intent to defraud whatever person is defrauded.   (Bishop on Crim. Law, Vol. 2, § 598.)

HUNT, J.—Phillip P. Vineyard, the appellant, was con-

victed of the crime of forgery, and sentenced to one year in the state's prison. From the judgment of conviction he appeals.

The information under which he was tried charges that said Vineyard "did willfully and unlawfully and feloniously and falsely and fraudulently, forge, utter, pass, and publish, as true and genuine, to one John Stromberg and one Jerry Mullins, a copartnership doing business under the firm name and style of Mullins & Stromberg, in Butte City, in said county and state, a certain writing on paper and check for the payment of money, and instrument in writing, of the tenor, purpurt, and effect following, to-wit:

'BUTTE, Mont., Jan. 24, 1895.   No. 1,152.

Butte Sampling Works. H. C. Carney, C. H. Hand. State Savings Bank:   Pay to H. J. Swanson or order $85 83-100 (eighty-five and 83-100 dollars).   [Signed]

H. C. CARNEY, Manager.        BUTTE SAMPLING WORKS.

[Indorsed]   H. J. Swanson.   Mullin & Stromberg.   First National Bank.   Paid Jan. 28, 1895.   Paying Teller, Butte, Montana.'

"With intent in him, the said defendant, thereby, and in the manner and form aforesaid, to willfully and unlawfully and feloniously, and falsely and fraudulently, cheat and defraud the said John Stromberg and the said Jerry Mullins (Mullins and Stromberg, as aforesaid) of the said sum of eighty-five and 83-100 dollars, contrary, etc."

In the argument of the case, appellant's counsel urged the insufficiency of the evidence to justify a conviction, and stated that he relied upon that assignment principally.

It appears that since November or December, 1894, defendant and one H. T. Swenson, and two others worked together under a mining lease. It was agreed in writing that shipments of ore be in the name of H. T. Swenson. On January 24, 1895, defendant went to Swenson, and asked him his initials. Swenson said, "H. T." Defendant told Swenson that he had delivered "that ore" (referring to a shipment) at the Butte

Sampling Works, but believed he had made a mistake in Swenson's initials, and put them "H. J.," as he had forgotten the correct initials. Swenson told him it was no matter, as he could get the check cashed. The next day the defendant said he had had the check cashed, and that it had been made out to H. J. Swanson. Defendant had no authority from Swenson to sign the check for him. Swenson never signed the same himself, and never received the money on the check. Defendant always called Swenson "Swanson." The ore was left at the sampling works by Vineyard in the name of H. J. Swanson. Appellant called the attention of Dayton, one of his co-lessees, to the "mistake" he had made, whereupon Dayton told him it would make no difference, as Swenson could get the same cashed. The next day there was some talk of a settlement, but it amounted to nothing more than a claim of appellant for money due him by his co-lessees. The check was presented by defendant to Stromberg, of the firm of Mullins & Stromberg. Stromberg, not knowing defendant, asked one Swan, who was with defendant when the check was presented, "Do you know this gentleman?" To which Swan replied, "Yes, sir." Thereupon defendant took a pen and indorsed the check "H. J. Swanson." No explanation was made of the real identity of the accused to Stromberg, and Stromberg says he understood at the time that the man whose name defendant indorsed was the payee of the check, or "H. J. Swanson," otherwise he would not have cashed it. The check was cashed by the First National Bank of Butte, for Mullins & Stromberg. They took it to the State Savings Bank, where payment was refused.

The defendant testified that he had given the name of H. J. Swanson to the sampling works in order to avoid trouble, in the way of attachments, if he used his own name; that the next day after he had cashed the check the several lessees had figured on their expenses, and the others were in debt to defendant; that Swenson declined to pay anything and threatened to arrest defendant for forgery unless defendant surrendered

half the money; that he knew "H. J. Swanson" was not Swenson's name, but he did not intend to ship the ore in Swenson's name; that he had no particular reason for not shipping the ore in accordance with the agreement, still he did not ship in Swenson's name, but considered he was entitled to the money. "I did not write Mr. Swenson's name on that check, therefore could commit no crime of forgery," testified defendant; and "I don't know that Mr. Swenson was the man that the money was intended for. * * * I wanted to avoid my creditors, and the name (H. J. Swanson) was just an assumed, fictitious name, without particular thought of the similarity between it and that of my partner." Defendant denied the interview with Swenson as to his initials, but admitted that when he presented the check to Stromberg the latter asked Swan "if that was the man, and Swan said I was."

Defendant denied that the agreement to ship was still in force. Swenson, in rebuttal, said it was.

From all these material facts, supplemented by others of minor importance, the jury were justified in finding that the defendant knew that the check was not intended for him, but for Swenson, and was so intended under the terms of the agreement between the defendant and his co-lessees. We are convinced, too, by the evidence, that, when defendant and Swan procured the money on the check, defendant's purpose was to have Stromberg cash it, as if doing so for the payee, Swenson or Swanson, and that he willfully meant to mislead and did deceive Stromberg into the belief that he (Vineyard) was the person to whose order the check was drawn. His silence when Stromberg asked for identification, and when Swan said he knew him, is, by itself, almost enough to convict him, for it is inexplicable with the actions of an honest man under similar circumstances. If a man goes to a stranger with a check made out to another, permits himself to be identified as the real payee, and secures the amount of the check as an accommodation, after making a fictitious or forged indorsement thereon, we unhesitatingly say that his intent is *prima facie* criminal,

and to hold otherwise, under the facts of this case, is contrary to all logical processes of reasoning by evidential induction, and to indulge in metaphysical abstractions wholly unwarranted by the testimony in the record.   The evidence convinces us that the defendant meant to and did personate Swenson, and fraudulently, with intent to impose on another, wrote the name "Swanson" on the check.   Thus was a forgery committed, within the legal definitions of the crime.

The defendant says that "Swanson" was a fictitious name. But, unfortunately for him, it is forgery to sign a money order or check of apparent legal efficiency in an assumed name, if the name was assumed to defraud the person to whom the order or check was given; or it may be forgery to sign the name of a nonexistent person, if under such circumstances as are likely to defraud.   (Wharton's Criminal Law, §§ 659, 660; Bishop's Criminal Law, § 587.)

The check was apparently sufficient upon its face to prejudice the rights of another person, if falsely made, or passed with a fraudulent purpose.   It was well calculated to deceive men of business capacity, and did deceive Stromberg.

The cunning of defendant, in misspelling Swenson's name, tends to show some deliberation in the method of the offense; but the similitude between "Swenson" and "Swanson" was close enough to be submitted to the jury, and it was for them to say whether, under all the facts and circumstances, the forgery was adapted, under the rules of law, to carry out the intended fraudulent purpose. (Bishop's Criminal Law, §§ 583, 592; *Thompson* v. *State,* 49 Ala. 16; *United States* v. *Mitchell,* 1 Baldw. 366, Fed. Cas. No. 15,787; *State* v. *Givens,* 5 Ala. 747; *State* v. *Hahn,* 38 La. Ann. 169; *Peete* v. *State,* 2 Lea (Tenn.) 513; *State* v. *Covington,* 94 N. C. 913; *State* v. *Baumon,* 52 Iowa 68.)

Certain errors are assigned in the refusal to give several instructions offered by the defendant upon the degree of certainty necessary to exist in the minds of the jury before they could convict.   But the court fully charged upon the presump-

tion of innocence, and told the jury that they must be satisfied by the evidence of the defendant's guilt, beyond a reasonable doubt, in order to convict, and explained what a reasonable doubt was, by the approved definition of this court in *Territory* v. *McAndrews*, 3 Mont. 158. The whole ground of the burden of proof was covered. The instructions, as a whole, were full and clear, not only in stating the legal elements of the crime charged, but in elaborating the need of proof of an intent to defraud, as a material part of the state's case in order to justify a verdict of guilty. The verdict was in accord with the evidence, and the assignments made are not well founded. The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.