STATE, RESPONDENT, *v.* MARTIN, APPELLANT.

(No. 1,887.)

(Submitted November 17, 1903. Decided December 21, 1903.)

*Criminal Law—Murder—Information—Leave to File—Discretion—Change of Venue—Prejudice of Inhabitants—Newspaper Articles — Disqualification of Juror—Requested Instructions—Degrees of Murder—Reasonable Doubt—Moral Certainty—Signature of County Attorney on Requested Instructions Given—Appeal—Harmless Error.*

1. Leave to file an information for murder, without a previous examination of the accused before a committing magistrate, should not be granted as of course, but rests in the sound discretion of the district judge on a proper showing.

2. An application for leave to file an information against an accused, without a previous examination before a committing magistrate, need not set forth the facts, it being sufficient that reasons satisfactory to the district court were presented, without regard to the manner of the presentation.

3. Penal Code, Section 2051, provides that a juror shall not be disqualified by reason of having formed an opinion founded on public rumor, statements in public journals, or common notoriety, provided it appears on his declaration under oath that he can and will act impartially on the matters to be submitted. *Held,* that where a jury was obtained from a special venire after the regular panel had been exhausted, and the appeal record does not contain the examination of the jurors, nor any evidence as to whether any of the jurors selected had read or discussed, or heard read or discussed, any of the newspaper articles in question, the refusal of a change of venue for prejudice of the people of the county, based on certain newspaper articles prejudicial to defendant published in a newspaper circulated in the county, was not reversible error.

4.  Under Act of February 15, 1901, Subd. 4 (Laws of 1901, p. 173), requested
    instructions are required to be signed merely for the purpose of identifica-
    tion, to be used by the court in making up its charge to the jury; it is an
    irregularity, but not reversible error, for the court to permit the name
    and official title of the county attorney to be placed on instructions re-
    quested by him and given to the jury.

5.  Where a court gave a proper definition of "reasonable doubt," an instruc-
    tion that the defendant is to be presumed innocent until the contrary is
    proved, and in case of a reasonable doubt whether his guilt is satisfactorily
    shown he is entitled to an acquittal, was not erroneous for failure to in-
    sert the phrase "beyond a reasonable doubt," following the word "proved."

6.· Where, in a prosecution for homicide, the court in a previous instruction
    had given correct definitions of murder in the first and second degrees, an
    instruction that, except as explained in previous instructions, the unlawful
    killing must be accompanied with a deliberate and clear intent to take life,
    in order to constitute murder in the first degree; that the intent to kill
    must be the result of deliberate premeditation, and must be formed on a
    pre-existing reflection, and not on sudden heat of passion sufficient to pre-
    clude the idea of deliberation, was not error.

7.  It is not error to refuse to give requested instructions, the substance of
    which has been given in the court's general charge.

8.  Where, in a prosecution for homicide, the court correctly defined the term
    "reasonable doubt," it was not error to refuse an instruction containing
    a definition of moral certainty, the two terms being equivalent.

*Appeal from District Court, Silver Bow County; John B.
McClernan, Judge.*

JAMES MARTIN was convicted of murder in the first degree.
From the judgment, and from the order overruling his motion
for a new trial, defendant appeals. Affirmed.

*Messrs. Booth & Morrin,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. COMMISSIONER POORMAN prepared the opinion
for the court.

In this case, on an unverified written application by the
county attorney, leave of court was obtained and an information
verified on information and belief was filed against the defend-
ant and one Charles Lennox, without a previous examination
before a committing magistrate, charging defendants with mur-
der in the first degree. A bench warrant was issued for the
arrest of the defendants. It does not appear what became of
the case against co-defendant Lennox, but a trial of the action

resulted in a verdict of guilty of murder in the first degree as to the defendant Martin, and sentence of death was imposed. Defendant moved for a new trial, which was overruled. This appeal is from the judgment and from the order overruling the motion for a new trial.

Prior to the trial the defendant moved "to vacate and set aside" the order granting leave to file the information, for the reason that the application therefor did not state facts sufficient to constitute probable cause, was not sworn to, and that no examination of defendant had been had before a committing magistrate. This motion was overruled by the court. A motion to quash the information was then interposed on the same grounds, and the further ground that the information was not properly verified.

Obtaining leave to file an information without a previous examination of the accused before a committing magistrate is not a mere perfunctory matter which should be granted as of course, but rests in the sound discretion of the district judge, upon the showing made to him at the time. The facts, however, from which the court draws its conclusions that such leave should be granted, need not be embodied in the application therefor. It is sufficient if reasons satisfactory to the court are presented, whatever may be the form or manner of their presentation.

An abuse of discretion materially prejudicing a substantial right of the accused would be ground for reversal, but no such abuse appears in this case; no such showing is made; and the appellate court cannot presume that the trial court exceeded its authority or abused its discretion.

The questions raised on the motions in this case relate wholly to the written application asking leave to file the information, and to the verification of the information. These questions have all been foreclosed and decided adversely to the contentions of appellant by former decisions of this court; and the district court did not err in overruling the motions. (*State v. Shafer,* 26 Mont. 11, 66 Pac. 463; *State* v. *Bowser,* 21 Mont. 133, 53

Pac. 179; *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267; *State* v. *Mansfield,* 19 Mont. 483, 48 Pac. 898; *State* v. *Brett,* 16 Mont. 360, 40 Pac. 873; *State* v. *Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *State* v. *Little Whirlwind,* 22 Mont. 425, 56 Pac. 820; *State ex rel. Nolan* v. *Brantly,* 20 Mont. 173, 50 Pac. 410.)

Subsequently, and before trial, defendant filed his petition for a change of place of trial, on the ground of prejudice of the people of the county where the action was pending, and undue influence exerted by the prosecution over the minds of the people of that county. The affidavit of defendant was filed in support of the petition. The petition and affidavit in support thereof are based upon certain articles, alleged to be prejudicial to defendant, appearing in a newspaper published and circulated in that county. The facts relative to these articles were known to the appellant prior to the trial. It appears from the record that the regular jury panel was exhausted, and that a special venire was issued before a jury was obtained. The record, however, does not contain the examination of the jurors on their *voir dire,* nor does the record contain any evidence or statement, either by affidavit or otherwise, as to whether any of the jurors selected had ever read or discussed, or heard read or discussed, any of the newspaper articles in question. A juror could not be prejudiced against defendant by reason of the articles complained of, unless he had some knowedge of their existence and contents. Neither does it appear from the record that any juror was challenged. This court cannot presume disqualification on the part of trial jurors merely from the fact that an article prejudicial to defendant was published in a newspaper having a circulation in the county where the action was tried.

Section 2051 of the Penal Code provides in part: "But no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety, provided it appear to

the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered in the minutes of the court or of the stenographer." This statute and similar statutes have been considered, both as to their meaning and constitutionality, by prior decisions of this court, and under these decisions, and the facts above stated, the objection of the appellant to the action of the trial court in overruling the application for change of venue is not well taken. (*Territory* v. *Bryson,* 9 Mont. 32, 22 Pac. 147; *State* v. *Sheerin,* 12 Mont. 539, 31 Pac. 543, 33 Am. St. Rep. 600; *State* v. *Russell,* 13 Mont. 164, 32 Pac. 854. See, also, *Spies* v. *Illinois,* 123 U. S. 131, 8 Sup. Ct. 21, 31 L. R. A. 80; *State* v. *Mott,* 29 Mont. 292, 74 Pac. 728.)

It is further claimed that the court erred in permitting the name and official title of the county attorney to be placed on the instructions given to the jury.

Subdivision 4 of the Act of February 15, 1901, provides, in substance, that, if either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney, and delivered to the court; that the counsel shall have reasonable opportunity to argue to the court any instructions offered; that the court shall give each instruction as requested, or refuse to do so, or give the instruction with a modification, and shall mark or pass upon each instruction so offered in such manner that it shall distinctly appear what instructions were given in whole or in part, and in like manner if it is refused or modified. All instructions given by the court must be filed together, with those refused, as a part of the record. (Session Laws 1901, p. 173.) If this law means that the precise papers containing the requested instructions are to be given to the jury and taken by them to the jury room, it would follow that in case of a modified instruction the jury would have both the original requested instruction and the modification thereof as given by the court.

Such is not the meaning of the law. Instructions are given by the court, not by the parties. The requested instructions are required to be signed by the party as a matter of identification. They are then given to the court, to be considered by it in preparing the instructions which it gives to the jury, after which they are marked, as required by the law, and are filed with other papers in the case. This very point appears to have been one of the assignments of error in *State* v. *McDonald*, 27 Mont. 230, 70 Pac. 724. The court in that case says: "We do not find any error made by the court. We add, however, that the submitting of written instructions to the jury, with the signatures of the several counsel attached to them, as in this case, is not to be commended." This case, however, was tried prior to the decision in *State* v. *McDonald, supra,* and we cannot say that the error complained of was more than an irregularity. It is insufficient to justify a reversal of the case.

The appellant objects to instructions Nos. 3, 6, 14 and 19, given by the court, and further objects to the refusal of the court to give certain instructions requested by the defendant.

In instruction No. 1 the court told the jury that the plea of not guilty on the part of the defendant required proof, on the part of the prosecution, of all the material allegations contained in the information, beyond a reasonable doubt.

Instruction No. 2 is to the effect that the fact that defendant had been accused and informed against was of itself no evidence of guilt, and that no juror should permit himself to be influenced against the defendant because of or on account of the information in the case.

Instruction No. 3 is in the following language: "You are instructed that the defendanat in a criminal action is presumed to be innocent until the contrary is proved, and, in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to acquittal."

In instruction No. 4, the court gave the definition of reasonable doubt as contained in *Territory* v. *McAndrews*, 3 Mont. 158, and which was taken from *Commonwealth* v. *Webster*, 5

Cush. 295, 52 Am. Dec. 711, and *Commonwealth* v. *Costley,* 118 Mass. 1, and which has been repeatedly indorsed by this court in subsequent decisions. (*State* v. *Gibbs,* 10 Mont. 213, 25 Pac. 289, 10 L. R. A. 749; *State* v. *Gleim,* 17 Mont. 17, 41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655; *State* v. *Harrison,* 23 Mont. 79, 57 Pac. 647; *State* v. *Bristol,* 21 Mont. 578, 55 Pac. 107; *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267; *State* v. *Vineyard,* 16 Mont. 138, 40 Pac. 173.)

The specific objection appellant makes to the third instruction is that the phrase "beyond a reasonable doubt" does not immediately follow the word "proved" as the same appears in the instruction. The presumption of innocence in a criminal case is a condition existing which must be overcome by evidence beyond all reasonable doubt; when so overcome it disappears— not before. The phrase "beyond a reasonable doubt" nominates the quantity, quality and kind of evidence necessary to overcome this presumption of innocence, and it is itself the condition of the mind resulting from this evidence. It has been held that the presumption of innocence is evidence introduced by the law in favor of the accused. (*Coffin* v. *United States,* 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481.) This presumtion may have the effect of evidence, in that it must be overcome by evidence; but, strictly speaking, it cannot be evidence, nor can it be introduced in the case, for it is in the case from its inception. It needs no introduction. It is the safeguard which the law casts around all persons accused of crime, and the defendant cannot be reached by a verdict of guilty until this safeguard is entirely removed. This removal can only be accomplished by evidence which satisfies the minds of the jurors beyond a reasonable doubt. The presumption of innocence is in effect the very thing against which the prosecution is directed.

Instruction No. 3 is a *verbatim* copy of Section 2072 of the Penal Code, and is, when read in connection with instruction No. 4, substantially the same in form and meaning as the instruction requested by the defendant. This instruction No. 3 is therefore not open to the objection made by appellant.

Instructions 1, 2, 3 and 4, given, are practically the same as the instruction quoted in *State* v. *Harrison,* 23 Mont. 79, 57 Pac. 647, which the trial court refused to give, and which refusal this court held was error. In the last case no instruction was given telling the jury that the defendant was presumed to be innocent.

Instructions numbered 6 and 19 are copies of Sections 352 and 41, respectively, of the Penal Code, and the giving of these instructions in this case was not error.

Instruction No. 14 is in the following language: "Except as explained in the the instructions, the unlawful killing must be accompanied with a deliberate and clear intent to take life, in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation; it must be formed upon a pre-existing reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation." In the preceding instruction the court gave correct definitions of murder in the first degree and murder in the second degree. Instruction No. 14, above quoted, is the same as the first half of the erroneous instruction quoted in *State* v. *Shafer,* 22 Mont. 17, 55 Pac. 526, except that the instruction in the case at bar is preceded by a reference to other instructions, which does not appear in the Shafer instruction. To the Shafer instruction is also added this further statement: "It is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, and if such is the case the killing is murder in the first degree." The instruction in the *Shafer Case* was held erroneous by reason of this latter clause being added to it; that it was not a correct definition of murder in the first degree, for the reason that it did not contain the words "malice aforethought." The only part of the instruction, however, which the court held erroneous in the *Shafer Case* is that last quoted, and the court then expressed some doubt as to whether "this error standing alone would be considered sufficient to authorize a reversal of the case." We do not find any error in the action of the court in giving this instruction, but will add that instruc-

tion No. 14 would be insufficient but for the fact of supplementary instructions used in connection with it, which cure the omissions apparent in it.

The instructions asked for by the defendant were given in substance, with one single exception, which will be noted herein. "It is not error to refuse to give instructions asked for, however correct or applicable, if they have in substance already been given in the charge of the court." (*Territory* v. *McAndrews,* 3 Mont. 158.) One of the instructions requested by the defendant which was not given by the court contained a definition of "moral certainty." None of the instructions given contained a definition of this term. If such definition is necessary, it was error in the court to refuse an instruction giving a proper definition.

It is difficult to define either "reasonable doubt" or "moral certainty" in terms more definite or comprehensive than the phrases themselves. In one of the many definitions given in Bouvier's Law Dictionary, we find "moral certainty" defined as "such certainty as convinces beyond a 'reasonable doubt,'" and one of the definitions of "beyond a reasonable doubt," "it is proof to a moral certainty."

In *State* v. *Harrison,* 23 Mont. 79, 57 Pac. 647, the instruction approved of by this court defines "reasonable doubt" as "an abiding conviction to a moral certainty." Likewise, in *State* v. *Gleim,* 17 Mont. 17, 41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655, in the instruction suggested, "moral certainty" is defined as proof so convincing that the juror would act upon it in matters of the highest concern and importance to his own interest. It is apparent that these definitions of "reasonable doubt" and of "moral certainty" are practically identical, for if a juror has no reasonable doubt of the truth of a fact, he should certainly not hesitate to act upon it. The law cannot take notice of unreasonable doubts.

In *Commonwealth* v. *Costley,* 118 Mass. 1, the court says: "The phrase 'moral certainty' has been introduced into our jurisprudence from the publicists and metaphysicians, and signifies

only a very high degree of probability.   \*   \*   \*   Proof 'beyond a reasonable doubt' is not beyond all possible or imaginary doubt, but such proof as precludes every reasonable hypothesis except that which it tends to support. It is proof 'to a moral certainty,' as distinguished from an absolute certainty. As applied to a judicial trial for crime, the two phrases are synonymous and equivalent; each has been used by eminent judges to explain the other; and each signifies such proof as satisfies the judgment and consciences of the jury, as reasonable men, and applying their reason to the evidence before them, that the crime charged has been committed by the defendant, and so satisfied them as to leave no other reasonable conclusion possible."

If these terms are synonymous and equivalent, it necessarily follows that a definition of the one is a definition of the other. It is possible always to question, and with some show of reason, any deduction made or conclusion reached from metaphysical speculation. The definition of "moral certainty" given in the refused instruction contains this statement: "Is the juror so convinced by the evidence of the truth of the fact sought to be proved that he himself would venture to act upon such conviction in matters of the highest concern and importance to his own interest?" This is in effect weighing the evidence in the case in the same manner and with the same standard that jurors would weigh evidence touching their own financial and other interests. It might be said with some degree of reason that human life is too sacred to be weighed in the coarse balances by which men adjust even the most important affairs of life— "scales which are turned at the touch of a bare preponderance, by which the issues are determined, but which are not sensible to the finer elements of purpose and intent which lie hidden in act and deed"—and it is doubtful if any deduction can be made or any definition given of the term "moral certainty" which could not be criticised. Certainty and stability in the rules governing judicial proceedings, however, should never be sacrificed to undue nicety in phraseology and too great critical exactness in the use of words. (*Territory* v. *Bannigan*, 1 Dak.

451, 46 N. W. 597.) In *State* v. *Gleim, supra,* the court says, "If the definition of 'moral certainty' is to be given at all"— then follow suggestions as to what it should be; and while it is not error to give the proper definition of "moral certainty," we cannot conclude that the rights of the defendant have been invaded, or that he has been prevented from having a fair trial, merely because the court did not specifically define the term "moral certainty," as a proper definition of the term "reasonable doubt" was given, as in the *McAndrews Case.*

We recommend that the judgment and order appealed from be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order appealed from are affirmed.

Rehearing denied January 16, 1904.