JUSTICE NELSON
specially concurs.
¶4 I concur in our decision to reverse and remand. The issues on appeal are:
¶5 1. Does Newman’s appellate brief adhere to the Montana Rules of
Appellate Procedure?
¶6 2. Should this Court review Newman’s claims pursuant to the doctrine of plain error review?
¶7 3. Did the prosecutor’s closing argument deprive Newman of afair trial?
FACTUAL AND PROCEDURAL BACKGROUND
¶8 In June of 2003, Newman resided in her house in Stevensville, along with her two children, Amber and Mike, and her brother, Randy Jordan (Jordan). Also living at the house was a girl named Miranda, who was one of Amber’s friends. Arthur Adler, who went by the nickname “Butch,” had previously lived at the house. He was Newman’s boyfriend, and he passed away in May of 2003.
¶9 Jordan became a suspect in an investigation regarding a burglary at Ace Hardware in Stevensville. Pursuant to this investigation, law enforcement officers executed a search warrant on Newman’s house on June 12, 2003. Detective Scott Burlingham, of the Ravalli County Sheriffs Office, was among the officers who searched the house. During his search, he found a bag of marijuana. He then stopped the search and applied for another search warrant based on this discovery. After securing the additional warrant, Detective Burlingham continued the search, finding drug paraphernalia and more marijuana.
¶10 As a result of the search, Newman was charged with criminal distribution of dangerous drugs, criminal possession of dangerous drugs, criminal possession of dangerous drugs with intent to distribute, and criminal possession of drug paraphernalia.
¶11 After the search of Newman’s house, law enforcement officers apprehended Jordan and found marijuana in the car he was riding in. Jordan initially admitted that all the drugs at Newman’s house belonged to him. However, he subsequently reached an agreement with the State whereby he agreed to testify against Newman in exchange for the State’s promise to recommend a thirty-year suspended sentence in his criminal prosecution. Pursuant to this *162 agreement, Jordan testified that the marijuana at Newman’s house belonged to her, and that she sold marijuana frequently. Harold and Mary Jane Rice, Newman’s neighbors, testified that people would come and go from Newman’s house frequently, but admitted that they did not observe any drug transactions. Newman testified that heavy traffic at her home consisted of her friends who were visiting out of concern for her well-being subsequent to Arthur Adler’s death.
¶12 During the State’s closing argument, the prosecutor repeatedly criticized Newman for her failure to call witnesses to corroborate her testimony. Newman’s counsel did not raise an objection to these comments. Newman was found guilty on all four charges and was subsequently sentenced. Newman now appeals, arguing that the prosecutor’s closing argument amounted to misconduct which denied her a fair trial. Newman also argues that her trial counsel rendered ineffective assistance.
DISCUSSION
¶13 1. Does Newman’s appellate brief adhere to the Montana Rules of Appellate Procedure?
¶14 The State argues that Newman has failed to adhere to Rule 23(a)(4), M.R.App.P., in asserting her claim of prosecutorial misconduct. Specifically, the State points to the argument section of Newman’s brief, and contends that Newman has failed to cite the trial transcript for the contested portions of the prosecutor’s closing argument. As a result, the State asserts, this Court is “required to scour the transcript to find the alleged quotes.” Thus, the State contends that we should refuse to address Newman’s arguments regarding prosecutorial misconduct for failure to cite to the transcript.
¶15 Rule 23(a)(3), M.R.App.P., requires that an appellant’s brief contain a statement of the facts which includes citations to the record. Rule 23(a)(4), M.R.App.P., requires that the argument section of an appellant’s brief contain citations to the pages of the record relied on. The statement of facts in Newman’s brief contains a verbatim recitation of the contested portions of the prosecutor’s closing argument, accompanied by accurate citations to the corresponding pages in the trial transcript. The argument section of Newman’s brief refers to these same transcript excerpts, but does not cite to the transcript in each instance. While the argument section of Newman’s brief could have been slightly more clear with additional transcript citations, we certainly are not required to “scour the transcript to find *163 the alleged quotes,” as the State asserts. As such, I conclude that Newman has satisfied the requirement of Rule 23(a)(4), M.R.App.P.
¶16 2. Should this Court review Newman’s claims pursuant to the doctrine of plain error review?
¶17 Newman argues thatthe prosecutor’s closing argument amounted to misconduct which denied her a fair trial and due process by violating her right to be presumed innocent and undermining the State’s burden to prove every element of the charged offenses beyond a reasonable doubt. Acknowledging her trial counsel’s failure to object to the prosecutor’s closing argument, Newman requests that we employ the doctrine of plain error to review her contentions on appeal. The State argues that plain error review is inappropriate because Newman’s claims are not supported by the record. As discussed hereinafter, I conclude that Newman’s claims are, in fact, supported by the record.
¶18 Typically, the failure to timely object to an alleged impropriety in the district court precludes this Court from reviewing the issue on appeal. Section 46-20-104(2), MCA. However, the common law doctrine of plain error review provides that this Court may, in certain circumstances, review a claim of alleged error even where no contemporaneous objection was made in the district court. State v. Finley (1996), 276 Mont. 126, 137, 915 P.2d 208, 215 (overruled in part on other grounds by State v. Gallagher, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21). As we have held:
[T]his Court may discretionarily review claimed errors that implicate a criminal defendant’s fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.
Finley, 276 Mont. at 137, 915 P.2d at 215. Plain error review is rooted in “our inherent power and paramount obligation to interpret Montana’s Constitution and to protect the various rights set forth in that document.” Finley, 276 Mont. at 137, 915 P.2d at 215. However, we do not lightly excuse the failure to raise a contemporaneous objection. Rather, we utilize plain error review sparingly, on a case-by-case basis. Finley, 276 Mont. at 138, 915 P.2d at 215.
*164 ¶19 “The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment” to the United States Constitution. Estelle v. Williams (1976), 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126. “The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.” Estelle, 425 U.S. at 503, 96 S.Ct. at 1692. “[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368. Moreover, the standard of proof beyond a reasonable doubt “plays a vital role in the American scheme of criminal procedure” in that it “provides concrete substance for the presumption of innocence.” In re Winship, 397 U.S. at 363, 90 S.Ct. at 1072.
¶20 In recognition of the foregoing principles, I conclude that the errors alleged by Newman implicate her fundamental constitutional right to due process under the Fourteenth Amendment to the United States Constitution, and Article II, Section 17, of the Montana Constitution. Further, I conclude that these alleged errors, if left unaddressed by this Court, would bring into question the fundamental fairness of Newman’s trial. Accordingly, I conclude that plain error review is appropriate in this case.
¶21 3. Did the prosecutor’s closing argument deprive Newman of a fair trial?
¶22 As noted above, Newman argues that the prosecutor’s closing argument amounted to misconduct which denied her a fair trial and due process by violating her right to be presumed innocent and undermining the State’s burden to prove every element of the charged offenses beyond a reasonable doubt. Newman also argues that she was denied a fair trial when the prosecutor commented on matters not in evidence. In response, the State contends that the prosecutor did not specifically say Newman was responsible for establishing her innocence, and that the jury instructions properly explained the presumption of innocence. The State also argues that the prosecutor’s comments were appropriate because he merely commented on the evidence as a whole, and suggested inferences which could be drawn therefrom. Finally, the State argues that Newman has failed to demonstrate prejudice resulting from the prosecutor’s comments.
¶23 In order to afford a defendant the due process guaranteed under both the United States Constitution and the Montana Constitution, the State must prove every element of a charged offense beyond a *165 reasonable doubt. State v. McCaslin, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24. This burden of proof is closely related to the presumption of innocence, as demonstrated by § 46-16-204, MCA, which provides that “[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether the defendant’s guilt is satisfactorily shown, the defendant must be found not guilty.”
¶24 Our prior holdings have acknowledged the close relation between these two legal principles, and have consistently recognized the presumption of innocence as an essential component of a criminal prosecution. In State v. Howell (1901), 26 Mont. 3, 5, 66 P. 291, 292, this Court stated that a criminal defendant
is always entitled to have the jury take into consideration the presumption of innocence which the law throws about him. . . . This presumption comes to the aid of the defendant at every stage of the case, and is finally rebutted and overturned only by evidence establishing every element of the crime charged to the satisfaction of the jury beyond a reasonable doubt.
Similarly, in State v. Martin (1903), 29 Mont. 273, 279, 74 P. 725, 727, this Court said that the presumption of innocence
is the safeguard which the law casts around all persons accused of crime, and the defendant cannot be reached by a verdict of guilty until this safeguard is entirely removed. This removal can only be accomplished by evidence which satisfies the minds of the jurors beyond a reasonable doubt. The presumption of innocence is in effect the very thing against which the prosecution is directed.
Again, in State v. Gilbert (1951), 125 Mont. 104, 109, 232 P.2d 338, 341, this Court stated that the “presumption of innocence surrounds the defendant at every step in the trial and to its benefits he is entitled in the determination of every fact by the jury.”
¶25 In State v. Williams (1979), 184 Mont. 111, 112, 601 P.2d 1194, 1195, this Court addressed the issue of whether the trial court’s refusal to give the defendant’s requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as secured by the due process guarantee of the United States Constitution and the Montana Constitution. Acknowledging the presumption of innocence as a foundational element of criminal law, this Court held that “even though the jury was properly instructed as to the burden of proof beyond a reasonable doubt, when he so requests, the defendant is still entitled to an instruction as to the presumption of innocence which
*166 ¶26 Other opinions from this Court have also acknowledged the paramount importance of the presumption of innocence. In State v. Nicholls (1982), 200 Mont. 144, 150, 649 P.2d 1346, 1349, this Court referred to the presumption of innocence as a “constitutional protection.” Similarly, in City of Missoula v. Shea (1983), 202 Mont. 286, 294, 661 P.2d 410, 414, this Court referred to the presumption of innocence as a “constitutional due process requirement.” It is apparent that our case law falls in line with Estelle, wherein the United States Supreme Court stated that although the presumption of innocence is not articulated in the United States Constitution, it is a “basic component of a fair trial” as guaranteed by the Fourteenth Amendment. Estelle, 425 U.S. at 503,96 S.Ct. at 1692. While our cases have consistently upheld the presumption of innocence as a fundamental element of Montana’s criminal law, this Court has not adopted the language ofEstelle to explicitly designate the presumption as a component of due process under Montana’s Constitution. Hence, I conclude that the presumption of innocence, although not articulated in the Montana Constitution, is an essential component of a fair trial as secured by the due process guarantee of Article II, Section 17, of the Montana Constitution. exists in his favor.” Williams, 184 Mont. at 112, 601 P.2d at 1195. Further, this Court held to the “per se rule that an instruction on the presumption of innocence is required in every case when a timely request has been made.” Williams, 184 Mont. at 114, 601 P.2d at 1196.
¶27 I now turn to the merits of Newman’s argument. During the State’s closing, the prosecutor presented the following argument to the jury:
What I think is very interesting is, ask yourself who did we not hear from. The Defendant had every opportunity to present whatever she wanted to present, and who did we not hear from? We did not hear from Amber, her daughter. We did not hear from Mike, her son. We did not hear from Miranda, the other girl who lived there for the last three years. George Garcia, we didn’t hear from George Garcia. Did we hear from Doug in Drummond? Didn’t hear from Doug.
She said, of course, there was a lot of traffic after Butch died because they were so concerned for me. ...
... [W]here are those so concerned friends now to say, I wasn’t buying drugs? We didn’t hear from any of that [sic]. I’d suggest it’s because they’ve flown the coop. The Defendant is not there *167 anymore. These aren’t concerned friends. They’re people who she was supplying.
... The Defendant knew that any one of those people could have been there .... Amber could have been here to say, yeah, I got in trouble for drugs, but, man, my mom never does drugs. They’re not here because they can’t say it. They’re not here because they can’t come in and testify that way and tell the truth.
If we look at all that, I think we have laid out a case for the four crimes that were charged....
Where was Amber to say, Uncle Randy is lying to you when [sic] says we sat around with my Mends and light up whenever mom did. Because that’s what happened. Probably with that red bong sitting in the front room when the detectives showed up.
¶28 As the presumption of innocence “surrounds the defendant at every step in the trial,” Gilbert, 125 Mont. at 109, 232 P.2d at 341, the prosecutor was not at liberty to undermine the presumption during the State’s closing argument. However, the prosecutor used this stage of the proceeding to repeatedly criticize Newman for failing to present witnesses to corroborate her testimony. Additionally, the prosecutor asked the jury to consider this failure in rendering a verdict, stating “[t]hey’re not here because they can’t come in and testify that way and tell the truth. If we look at all that, I think we have laid out a case for the four crimes that were charged.”
¶29 These arguments suggested to the jury that guilt could be determined, in part, based on Newman’s failure to call witnesses. This suggestion directly contravened the presumption of innocence. Further, by asserting that Newman’s defense lacked merit for her failure to call witnesses, the prosecutor’s comments suggested that Newman had some obligation to present evidence. This suggestion also directly contravened the presumption of innocence, pursuant to which Newman had absolutely no obligation to prove any facts. Moreover, the prosecutor’s argument improperly shifted the jury’s attention from the State’s substantive evidence to the lack of affirmative evidence presented by Newman. This further undermined the presumption of innocence and diminished the State’s burden of proof in the mind of any juror who took this argument seriously.
¶30 The same portion of the prosecutor’s closing argument which undermined Newman’s constitutional right to the presumption of innocence, was also improper because it contained references to matters not in evidence. We have held that it is improper for a *168 prosecutor to comment on evidence not of record during closing argument. State v. Gladue, 1999 MT 1, ¶ 14, 293 Mont. 1, ¶ 14, 972 P.2d 827, ¶ 14. Here, the prosecutor asserted that some of Newman’s acquaintances and family members with knowledge relevant to the case were not at the trial because they had “flown the coop” or could not testify truthfully. However, there was no evidence regarding the willingness of these individuals to appear at trial, and no evidence regarding their willingness to testify truthfully.
¶31 In Berger v. United States (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, the United States Supreme Court discussed the special responsibility of a prosecutor and the harm potentially resulting from improper prosecutorial efforts. The Court stated:
[W]hile [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.
Berger, 295 U.S. at 88, 55 S.Ct. at 633. Recognizing the special influence a prosecutor has with a jury based on his or her status as a representative of the State, I am reluctant to condone any prosecutorial argument that undermines the presumption of innocence. However, this Court will not presume that a defendant suffers prejudice from improper prosecutorial comments. Gladue, ¶ 27. Rather, a defendant must demonstrate, based on the record, that the prosecutor’s improper comments prejudiced his or her right to a fair trial. Gladue, ¶ 27. In determining whether prejudice resulted, the prosecutor’s improper comments must be viewed in the context of the case in its entirety. Gladue, ¶ 27.
¶32 Here, I conclude that Newman was prejudiced because the prosecutor aggressively suggested that the jury disregard the presumption of innocence, thereby creating a risk that she would be convicted on that basis. The fact that the prosecutor did not explicitly state that Newman was responsible for establishing her innocence does not alleviate the effect of this improper argument. Nor do proper jury instructions cure such an error. I simply can not excuse a prosecutorial *169 argument that so forcefully contravenes a fundamental constitutional protection.
¶33 Accordingly, I conclude that Newman was denied a fair trial because the prosecutor’s closing argument effectively undermined her constitutional right to the presumption of innocence as secured by the due process guarantee of the Montana Constitution.
¶34 That being said, I address Justice Warner’s contention that “the arguments in question were not at all aimed at the presumption of innocence,” but were “an attack on Newman’s credibility.” My opinion is based on the prosecutor’s words as they appear in the transcript-the words which were spoken to the jury. The dissent, however, resorts to speculation about the prosecutor’s intent, spinning the closing' argument as a constitutionally harmless swipe at Newman’s credibility. However, even if it were possible to accurately discern a pure motive behind the prosecutor’s comments, I could not hold that it would cure the serious constitutional problem here. Regardless of where the prosecutor “aimed” with these comments, they struck at the very heart of a fundamental constitutional protection. No pure motive can serve to remedy such a violation. Thus, I focus on the actual words used.
¶35 I take exception to the dissent’s baseless accusation that I have taken the prosecutor’s comments “out of context.” Perhaps this charge results from my refusal to inject the transcript with speculation regarding the prosecutor’s motives. Of course, I have focused on the entirety of the contested comments in the context in which they were used. Further, I have reviewed the closing arguments in full, and considered them in light of the trial as a whole. Indeed, it is the dissent that supplies the context-by way of speculation-which supports a different conclusion. Moreover, I can not envision a context that would justify the suggestion, as was made by the prosecutor, that a jury may legitimately consider a defendant’s failure to present witnesses as a strike against him or her. This notion is absolutely contrary to the presumption of innocence.
¶36 My consideration of the context leads me to note that the dissent’s position is undermined by the fact that Newman’s counsel recognized the prosecutor’s comments as an attack on the presumption of innocence, and responded accordingly in closing. As the dissent notes, Newman’s counsel restated the prosecutor’s comments and immediately responded by explaining the presumption of innocence. Hence, I am simply recognizing the same impropriety which defense counsel recognized during closing.
*170 ¶37 The dissent goes on to suggest that even if the prosecutor’s comments were an attack on the presumption of innocence, defense counsel’s closing argument, together with the jury instructions regarding the State’s burden of proof, would provide a sufficient remedial effect. I can not agree. To take such a position would allow juries to be subjected to conflicting messages regarding the presumption of innocence. This, in turn, would force defendants to beg the jury to rely on the instructions rather than the prosecutor’s arguments. Of course, defendants should not have to struggle for the right to be presumed innocent. That fight was waged, and won, long ago. Estelle, 425 U.S. at 503, 96 S.Ct. at 1692. As this Court has said, the presumption of innocence “is in effect the very thing against which the prosecution is directed.” Martin, 29 Mont. at 279, 74 P. at 727. Thus, a prosecutor must overcome the presumption by presenting persuasive evidence and arguments; not by suggesting that the defendant has some obligation to justify the presumption.
¶38 Moreover, to the extent that the closing argument can be construed as an attack on Newman’s credibility, its status as such can not render it constitutionally valid. In other words, an attack on the presumption of innocence is not rendered acceptable just because it is also an attack on the defendant’s credibility. It was the prosecutor’s job to tailor any attacks on Newman’s credibility so as not to undermine any of her fundamental constitutional rights.
¶39 The dissent also cites this Court’s previous holding that it is proper for the prosecution to comment on conflicts and contradictions in testimony, as well as to comment on the evidence presented and suggest to the jury inferences which may be drawn therefrom. Gladue, ¶ 15. However, the prosecutor’s suggestion that someone not present at trial might say something in contradiction to Newman’s testimony simply does not qualify as a comment on conflicts or contradictions in testimony. Nor was this suggestion a comment on the evidence presented. Rather, it was a comment on evidence not presented at trial. As such, I do not find this precedent applicable.
¶40 Finally, I share the dissent’s concern with limiting the use of plain error review. However, this Court must be mindful to employ a similar level of concern in evaluating alleged constitutional violations.
¶41 Justice Rice’s dissent maintains that the prosecutor’s argument was merely a comment regarding other individuals’ failure to testify. Consequently, the dissent finds the prosecutor’s comments acceptable under State v. Rodarte, 2002 MT 317, 313 Mont. 131, 60 P.3d 983, wherein we stated that “the prosecution is permitted to point out facts *171 at issue which could have been controverted by persons other than the defendant, but were not.” Rodarte, ¶ 14. The short portion of the prosecutor’s argument which the dissent quotes could arguably be considered acceptable under Rodarte if viewed in isolation. However, I find Rodarte irrelevant when viewing the prosecutor’s arguments in their entirety.
¶42 The dissent’s analysis ignores pertinent parts of the trial transcript. First, it ignores the fact that the prosecutor repeatedly criticized Newman personally for failing to call witnesses to corroborate her testimony. The prosecutor argued Newman “knew that any one of those people could have been there,” that she “had every opportunity to present whatever she wanted,” and that she nonetheless failed to present numerous witnesses who could have corroborated her testimony. Second, the dissent’s analysis ignores the fact that the prosecutor then proceeded to ask the jury to consider Newman’s failure to call such witnesses in rendering a verdict, stating “[i]f we look at all that, I think we have laid out a case for the four crimes that were charged.” These arguments placed unwarranted blame squarely on Newman for failing to present witnesses. Thus, I can not agree that this was merely an attack on Newman’s testimony or an attack upon “the failure of persons to testify who could have controverted the State’s evidence,” as the dissent asserts.
¶43 The holding of Rodarte can only be decisive in this case if we ignore significant portions of the prosecutor’s closing argument, and I will not do so. Nor would I expand Rodarte so as to condone the prosecutorial argument at issue here. The Rodarte rule, by its plain terms, simply does not give prosecutors license to suggest to a jury that a defendant has some duty to call witnesses to corroborate his or her testimony. Nor can Rodarte be construed as a rule allowing prosecutors to ask a jury to consider such a failure as evidence adverse to a defendant.
¶44 As part of its analysis, the dissent asserts that Newman “had not relied upon her presumption of innocence-she had instead affirmatively offered an alternate explanation of the State’s evidence.” I must respond to this statement because the dissent proffers it in a way which suggests that a defendant’s decision to testify has some bearing on the protection provided by the presumption of innocence. Particularly, it suggests that the presumption of innocence somehow had less force here because Newman did not “rely” upon it. Further, it suggests that Newman had to choose between maintaining the full *172 benefit of the presumption on one hand, and testifying in her own defense on the other hand.
¶45 Of course, we can only speculate as to whether Newman “relied” on the presumption of innocence. But even if she and her counsel completely disregarded the presumption, its constraints upon the prosecution were not thereby rendered any less stringent. While the dissent attaches some significance to Newman’s decision to testify, it cites no authority for the notion that this fact should have some bearing on the analysis regarding the presumption of innocence. I reject this notion, as it is well established that the presumption is overcome only by proof beyond a reasonable doubt of every element of a charged offense. Section 46-16-204, MCA; Howell, 26 Mont. at 5, 66 P. at 292; Martin, 29 Mont. at 279, 74 P. at 727. Thus, there is nothing inconsistent in clinging steadfastly to the presumption of innocence while also testifying in one’s own defense. To reason otherwise would be to create new legal precédent repugnant to the presumption of innocence.
¶46 Finally, the dissent claims that defense counsel's failure to object to the prosecutor’s argument was a “choice to take the issue from the judge for his own purposes.” Any knowledge the dissent may possess regarding defense counsel's thought process at trial is based on pure speculation and is not properly considered by this Court, as the record before us discloses nothing in this regard. Moreover, even if it were possible to accurately divine defense counsel’s motives, the dissent cites no authority for the proposition that such an improper intent should impact the analysis regarding the presumption of innocence.
CONCLUSION
¶47 In conclusion, I note that Newman claims her trial counsel provided ineffective assistance when he failed to object to the prosecutor’s closing argument and failed to offer an accomplice jury instruction. Having already discussed the dispositive issue, I will not address these arguments. Counsel can request a proper accomplice instruction in the new trial or refrain from doing so after consulting with Newman.
¶48 Having concluded that the prosecutor’s closing argument deprived Newman of a fair trial, I concur in our decision to reverse and remand for a new trial.
JUSTICE COTTER joins in the special concurrence of JUSTICE NELSON.