STATE, RESPONDENT, v. GILBERT, APPELLANT.

No. 9048.

Submitted March 7, 1951. Decided June 6, 1951.

232 Pac. (2d) 338.

Mr. John D. Gillan, Havre, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. William H. Coldiron,

Asst. Atty. Gen., Mr. Edward J. Ober, Jr., County Atty., Havre, for respondent.

Mr. Coldiron and Mr. Gillan argued orally.

MR. JUSTICE FREEBOURN:

John Gilbert, defendant and appellant, was charged by information, with the crime of "carrying a concealed weapon outside a city," in that on April 13, 1950, he did, "knowingly, wilfully, unlawfully and feloniously, outside the limits of the City of Havre, Montana, carry and bear concealed upon his person a deadly weapon, to-wit: a .38 calibre revolver * * *".

Upon the trial he was convicted by a jury and sentenced by the court to imprisonment in the county jail of Hill county for a term of nine months and to pay a fine of $300. From the judgment he appeals.

Defendant, a married man with family, made his livelihood during the winter by trapping. He had trapped two years for the government. In his trapping he used a small pistol.

On April 13, 1950, he, after running trap lines on Red Rock creek and along the Milk river, in company with Monte Boe and Lee Norby, using Norby's car, took some beaver hides to Harry Soderberg's Pacific Hide and Fur Company in Havre.

From the Hide Company's place of business they went to the Blue Moon tavern outside of Havre. It was in this tavern that the events occurred which resulted in defendant's trial and conviction.

The state had but two witnesses: one, Gladys Moolis, a lady bartender, who testified in the case in chief, and a deputy sheriff, who, in rebuttal, testified to a statement Lee Norby denied making.

It appears that defendant, while in the Blue Moon, went to the tavern restroom. Upon leaving the restroom he forgetfully left behind him a loaded pistol. Shortly thereafter a twelve-year old boy, in the care of Gladys Moolis, found the pistol in the restroom, and taking it outside the tavern fired one shot from it. He then gave it to Gladys Moolis and she, while behind

the bar, returned it to defendant who immediately unloaded it.

The testimony of the lady bartender of what occurred after defendant unloaded the pistol is the basis of defendant's conviction, insofar as this record is concerned.

She asserts that after defendant unloaded the weapon he concealed it upon his person. She asserts, not only that J. T. Hale, the tavern proprietor, was not in the tavern when defendant concealed the pistol upon his person, but that J. T. Hale was not present when defendant first entered the tavern. She further says that when defendant handed the pistol to J. T. Hale for inspection it was unloaded and that defendant had it concealed on his person.

J. T. Hale, the Blue Moon proprietor, contradicts Gladys Moolis in important particulars. He recalled the defendant coming into the tavern. He says the pistol was loaded when it was handed to him and he broke it open. J. T. Hale does not say defendant took the pistol from his person. To the contrary, he says defendant went outside the tavern and re-entered carrying the pistol in his hand; that defendant handed it to him; that he broke it open and then laid it upon the bar.

On direct examination Gladys Moolis's testimony shows: "Q. What did he do with the gun? A. He put it inside of his shirt and under his belt.

"Q. Did he put it between his shirt and —— A. [Interrupting] I believe so, yes.

"Q. But at least he put it under his shirt? A. Yes.

"Q. Inside of the belt? A. Yes, sir. * * *

"Q. Well, Gladys, calling your attention to the afternoon of that day when you stated that the defendant and his two companions came into the Blue Moon, was J. T. Hale there at that time? A. No. I know J. T. wasn't there when they came in because I was alone in there, and Johnny told me his name— I had talked to him before on the phone.

"Q. Well, did J. T. Hale come in the Blue Moon while the defendants, Norby and Monte were there? A. Yes, he did. * * *

"Q. While they were standing there, did you see the defend-

ant Johnny Gilbert, do anything with the gun? A. Well, he made some remarks to J. T. and he handed the gun to J. T. and J. T. opened the gun—it was empty because I could see through the little holes.

"Q. Did you see where the defendant got the gun? A. I believe, he took it from his shirt.

"Q. Did you see him doing anything with his shirt? A. I think I did, yes, and he took it from underneath his shirt because he didn't leave the building.

"Q. And he took it from underneath his shirt? A. I don't know whether it was under his shirt or his jacket.

"Q. Would it be from the neighborhood of the waist belt? A. Yes."

Not only does the use of "I believe" and "I think" show an uncertain mind, but she did not know whether defendant had the pistol "under his shirt or his jacket." The question might well be asked: If the gun was under the shirt, how could she see it under the belt? This uncertainty in the mind of the only state's witness to the facts of the crime must have been recognized by the prosecutor, and would account for the leading question: "Would it be from the neighborhood of the waist belt?" which elicited the answer, "Yes."

Compare now the testimony of J. T. Hale, the tavern owner, as to what occurred when defendant handed him the pistol.

"Q. Referring to the 13th day of April, 1950, do you recall John Gilbert coming into your place of business on that day? A. Yes, sir. * * *

"Q. After you had this conversation that you have just related, what did John Gilbert say to you? A. He said that I have a gun out in the car that you have never seen, so I will go out and bring it in and show it to you. I said, 'all right,' he went out to the car and brought in a little pistol and handed it to me, and we were talking about it and he said that it was a gun that he was going to carry on his trap lines, and we just talked about it; that was about all I guess.

"Q. Did you observe how John Gilbert brought the gun

from the car into your place of business? A. He had it in his hand.

"Q. You saw it in his hand, did you? A. That's right.

"Q. After you had examined the gun, did you see what John Gilbert did with it? A. He brought the gun and handed it to me; I broke it and it was loaded; I put it back together and then I laid it on the bar. * * *

"Q. Where was the gun when you left? A. Laying on the bar."

J. T. Hale was not asked any question on cross-examination concerning the testimony just quoted except as to where the gun was lying when he left. No attempt was made to shake his testimony, so given, on cross-examination.

Defendant said proprietor Hale was in the tavern when he arrived; that he went out to the car and obtained the pistol and brought it into the tavern, carrying it in his hand. He said he handed the pistol to Hale who broke it open and that it was loaded at that time; that he went to the restroom, carrying the pistol in his hand and putting it down, forgot it when he came out. He said Gladys Moolis returned it to him, at which time he unloaded it, and handed it to Norby. He denied concealing the gun on his person.

Both Norby and Boe corroborate defendant.

R. C. M. 1947, section 94-7203, provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

R. C. M. 1947, section 93-301-4, provides: "The law does ▮ not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty is only required, or that degree of proof which produces conviction in an unprejudiced mind."

The provisions of this section apply to criminal causes. State v. Powers, 39 Mont. 259, 102 Pac. 583; State v. Cassill, 71 Mont. 274, 229 Pac. 716.

The presumption of innocence surrounds the defendant at every step in the trial and to its benefits he is entitled in the determination of every fact by the jury.

It has the weight and effect of evidence in the defendant's behalf. State v. Harrison, 23 Mont. 79, 57 Pac. 647; State v. Wong Sun, 114 Mont. 185, 133 Pac. (2d) 761.

It is quite evident that, under the law and upon the evidence submitted, the prosecution did not prove the defendant guilty of carrying a concealed weapon upon his person beyond a reasonable doubt and to a moral certainty.

That the jury found defendant guilty does not weaken this conclusion. It simply tends to show that something other than evidence of concealment swayed the judgment of the jury. If the thing that caused defendant's conviction was the fact that he left the pistol in the restroom where a boy found and fired it, thus endangering himself and, perhaps, others, the answer is: Although such evidence is part of the *res gestae* and properly admissible as such, nevertheless, the defendant is not on trial for leaving the pistol in the restroom, but only for the crime of carrying a pistol concealed on his person and he can be legally convicted for that crime only.

The evidence was insufficient to justify defendant's conviction for the crime charged. For that reason the case is remanded to the lower court with directions to dismiss it.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY, and ANGSTMAN, concur