No. 04-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 348

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

SANDRA JORDAN NEWMAN,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Twenty-First Judicial District,
        In and for the County of Ravalli, Cause No. DC 2003-93
        The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

   Kristina Neal, Appellate Defender Office, Helena, Montana

   For Respondent:

   Hon. Mike McGrath, Montana Attorney General, Pamela P. Collins,
   Assistant Attorney General, Helena, Montana; George H. Corn, Ravalli
   County Attorney, William Fulbright, Deputy County Attorney, Hamilton,
   Montana

         Submitted on Briefs: July 13, 2005

         Decided: December 28, 2005

Filed:

_____
         Clerk

¶1 Following a jury trial in the District Court for the Twenty-First Judicial District, Ravalli County, Sandra Jordan Newman (Newman) was convicted of four drug-related offenses. Newman appeals. We reverse the conviction and remand for a new trial.

¶2 Four members of this Court agree that Newman's conviction should be reversed and that this cause should be remanded for a new trial. There is not agreement amongst these members as to the basis for reversal, however. Therefore, Justice James C. Nelson (joined by Justice Patricia O. Cotter) and Justice W. William Leaphart (joined by Justice Brian M. Morris) each specially and separately concur that this cause be reversed and remanded for a new trial. The dispositive issues, facts and arguments will be addressed separately in each special concurrence.

¶3 We reverse and remand for a new trial.

Justice James C. Nelson specially concurs.

¶4    I concur in our decision to reverse and remand.  The issues on appeal are:

¶5    1.  Does Newman's appellate brief adhere to the Montana Rules of Appellate Procedure?

¶6    2.  Should this Court review Newman's claims pursuant to the doctrine of plain error review?

¶7    3.  Did the prosecutor's closing argument deprive Newman of a fair trial?

### FACTUAL AND PROCEDURAL BACKGROUND

¶8    In June of 2003, Newman resided in her house in Stevensville, along with her two children, Amber and Mike, and her brother, Randy Jordan (Jordan).  Also living at the house was a girl named Miranda, who was one of Amber's friends.  Arthur Adler, who went by the nickname "Butch," had previously lived at the house.  He was Newman's boyfriend, and he passed away in May of 2003.

¶9    Jordan became a suspect in an investigation regarding a burglary at Ace Hardware in Stevensville.  Pursuant to this investigation, law enforcement officers executed a search warrant on Newman's house on June 12, 2003.  Detective Scott Burlingham, of the Ravalli County Sheriff's Office, was among the officers who searched the house.  During his search, he found a bag of marijuana.  He then stopped the search and applied for another search warrant based on this discovery.  After securing the additional warrant, Detective Burlingham continued the search, finding drug paraphernalia and more marijuana.

3

¶10    As a result of the search, Newman was charged with criminal distribution of dangerous drugs, criminal possession of dangerous drugs, criminal possession of dangerous drugs with intent to distribute, and criminal possession of drug paraphernalia.

¶11    After the search of Newman's house, law enforcement officers apprehended Jordan and found marijuana in the car he was riding in. Jordan initially admitted that all the drugs at Newman's house belonged to him. However, he subsequently reached an agreement with the State whereby he agreed to testify against Newman in exchange for the State's promise to recommend a thirty-year suspended sentence in his criminal prosecution. Pursuant to this agreement, Jordan testified that the marijuana at Newman's house belonged to her, and that she sold marijuana frequently. Harold and Mary Jane Rice, Newman's neighbors, testified that people would come and go from Newman's house frequently, but admitted that they did not observe any drug transactions. Newman testified that heavy traffic at her home consisted of her friends who were visiting out of concern for her well-being subsequent to Arthur Adler's death.

¶12    During the State's closing argument, the prosecutor repeatedly criticized Newman for her failure to call witnesses to corroborate her testimony. Newman's counsel did not raise an objection to these comments. Newman was found guilty on all four charges and was subsequently sentenced. Newman now appeals, arguing that the prosecutor's closing argument amounted to misconduct which denied her a fair trial. Newman also argues that her trial counsel rendered ineffective assistance.

**DISCUSSION**

4

¶13    *1. Does Newman's appellate brief adhere to the Montana Rules of Appellate Procedure?*

¶14    The State argues that Newman has failed to adhere to Rule 23(a)(4), M.R.App.P., in asserting her claim of prosecutorial misconduct. Specifically, the State points to the argument section of Newman's brief, and contends that Newman has failed to cite the trial transcript for the contested portions of the prosecutor's closing argument. As a result, the State asserts, this Court is "required to scour the transcript to find the alleged quotes." Thus, the State contends that we should refuse to address Newman's arguments regarding prosecutorial misconduct for failure to cite to the transcript.

¶15    Rule 23(a)(3), M.R.App.P., requires that an appellant's brief contain a statement of the facts which includes citations to the record. Rule 23(a)(4), M.R.App.P., requires that the argument section of an appellant's brief contain citations to the pages of the record relied on. The statement of facts in Newman's brief contains a verbatim recitation of the contested portions of the prosecutor's closing argument, accompanied by accurate citations to the corresponding pages in the trial transcript. The argument section of Newman's brief refers to these same transcript excerpts, but does not cite to the transcript in each instance. While the argument section of Newman's brief could have been slightly more clear with additional transcript citations, we certainly are not required to "scour the transcript to find the alleged quotes," as the State asserts. As such, I conclude that Newman has satisfied the requirement of Rule 23(a)(4), M.R.App.P.

¶16 *2. Should this Court review Newman's claims pursuant to the doctrine of plain error review?*

¶17 Newman argues that the prosecutor's closing argument amounted to misconduct which denied her a fair trial and due process by violating her right to be presumed innocent and undermining the State's burden to prove every element of the charged offenses beyond a reasonable doubt. Acknowledging her trial counsel's failure to object to the prosecutor's closing argument, Newman requests that we employ the doctrine of plain error to review her contentions on appeal. The State argues that plain error review is inappropriate because Newman's claims are not supported by the record. As discussed hereinafter, I conclude that Newman's claims are, in fact, supported by the record.

¶18 Typically, the failure to timely object to an alleged impropriety in the district court precludes this Court from reviewing the issue on appeal. Section 46-20-104(2), MCA. However, the common law doctrine of plain error review provides that this Court may, in certain circumstances, review a claim of alleged error even where no contemporaneous objection was made in the district court. *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215 (*overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21). As we have held:

> [T]his Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

6

*Finley*, 276 Mont. at 137, 915 P.2d at 215. Plain error review is rooted in "our inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set forth in that document." *Finley*, 276 Mont. at 137, 915 P.2d at 215. However, we do not lightly excuse the failure to raise a contemporaneous objection. Rather, we utilize plain error review sparingly, on a case-by-case basis. *Finley*, 276 Mont. at 138, 915 P.2d at 215.

¶19 "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment" to the United States Constitution. *Estelle v. Williams* (1976), 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle*, 425 U.S. at 503, 96 S.Ct. at 1692. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368. Moreover, the standard of proof beyond a reasonable doubt "plays a vital role in the American scheme of criminal procedure" in that it "provides concrete substance for the presumption of innocence." *In re Winship*, 397 U.S. at 363, 90 S.Ct. at 1072.

¶20 In recognition of the foregoing principles, I conclude that the errors alleged by Newman implicate her fundamental constitutional right to due process under the Fourteenth Amendment to the United States Constitution, and Article II, Section 17, of the Montana Constitution. Further, I conclude that these alleged errors, if left unaddressed by this Court,

would bring into question the fundamental fairness of Newman's trial. Accordingly, I conclude that plain error review is appropriate in this case.

¶21     *3. Did the prosecutor's closing argument deprive Newman of a fair trial?*

¶22     As noted above, Newman argues that the prosecutor's closing argument amounted to misconduct which denied her a fair trial and due process by violating her right to be presumed innocent and undermining the State's burden to prove every element of the charged offenses beyond a reasonable doubt. Newman also argues that she was denied a fair trial when the prosecutor commented on matters not in evidence. In response, the State contends that the prosecutor did not specifically say Newman was responsible for establishing her innocence, and that the jury instructions properly explained the presumption of innocence. The State also argues that the prosecutor's comments were appropriate because he merely commented on the evidence as a whole, and suggested inferences which could be drawn therefrom. Finally, the State argues that Newman has failed to demonstrate prejudice resulting from the prosecutor's comments.

¶23     In order to afford a defendant the due process guaranteed under both the United States Constitution and the Montana Constitution, the State must prove every element of a charged offense beyond a reasonable doubt. *State v. McCaslin*, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24. This burden of proof is closely related to the presumption of innocence, as demonstrated by § 46-16-204, MCA, which provides that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a

reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant must be found not guilty."

¶24    Our prior holdings have acknowledged the close relation between these two legal principles, and have consistently recognized the presumption of innocence as an essential component of a criminal prosecution.  In *State v. Howell* (1901), 26 Mont. 3, 5, 66 P. 291, 292, this Court stated that a criminal defendant

> is always entitled to have the jury take into consideration the presumption of innocence which the law throws about him. . . .  This presumption comes to the aid of the defendant at every stage of the case, and is finally rebutted and overturned only by evidence establishing every element of the crime charged to the satisfaction of the jury beyond a reasonable doubt.

Similarly, in *State v. Martin* (1903), 29 Mont. 273, 279, 74 P. 725, 727, this Court said that the presumption of innocence

> is the safeguard which the law casts around all persons accused of crime, and the defendant cannot be reached by a verdict of guilty until this safeguard is entirely removed.  This removal can only be accomplished by evidence which satisfies the minds of the jurors beyond a reasonable doubt.  The presumption of innocence is in effect the very thing against which the prosecution is directed.

Again, in *State v. Gilbert* (1951), 125 Mont. 104, 109, 232 P.2d 338, 341, this Court stated that the "presumption of innocence surrounds the defendant at every step in the trial and to its benefits he is entitled in the determination of every fact by the jury."

¶25    In *State v. Williams* (1979), 184 Mont. 111, 112, 601 P.2d 1194, 1195, this Court addressed the issue of whether the trial court's refusal to give the defendant's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as secured by the due process guarantee of the United States Constitution and the Montana

Constitution. Acknowledging the presumption of innocence as a foundational element of criminal law, this Court held that "even though the jury was properly instructed as to the burden of proof beyond a reasonable doubt, when he so requests, the defendant is still entitled to an instruction as to the presumption of innocence which exists in his favor." *Williams*, 184 Mont. at 112, 601 P.2d at 1195. Further, this Court held to the "per se rule that an instruction on the presumption of innocence is required in every case when a timely request has been made." *Williams*, 184 Mont. at 114, 601 P.2d at 1196.

¶26 Other opinions from this Court have also acknowledged the paramount importance of the presumption of innocence. In *State v. Nicholls* (1982), 200 Mont. 144, 150, 649 P.2d 1346, 1349, this Court referred to the presumption of innocence as a "constitutional protection." Similarly, in *City of Missoula v. Shea* (1983), 202 Mont. 286, 294, 661 P.2d 410, 414, this Court referred to the presumption of innocence as a "constitutional due process requirement." It is apparent that our case law falls in line with *Estelle*, wherein the United States Supreme Court stated that although the presumption of innocence is not articulated in the United States Constitution, it is a "basic component of a fair trial" as guaranteed by the Fourteenth Amendment. *Estelle*, 425 U.S. at 503, 96 S.Ct. at 1692. While our cases have consistently upheld the presumption of innocence as a fundamental element of Montana's criminal law, this Court has not adopted the language of *Estelle* to explicitly designate the presumption as a component of due process under Montana's Constitution. Hence, I conclude that the presumption of innocence, although not articulated in the

10

Montana Constitution, is an essential component of a fair trial as secured by the due process guarantee of Article II, Section 17, of the Montana Constitution.

¶27 I now turn to the merits of Newman's argument. During the State's closing, the prosecutor presented the following argument to the jury:

> What I think is very interesting is, ask yourself who did we not hear from. The Defendant had every opportunity to present whatever she wanted to present, and who did we not hear from? We did not hear from Amber, her daughter. We did not hear from Mike, her son. We did not hear from Miranda, the other girl who lived there for the last three years. George Garcia, we didn't hear from George Garcia. Did we hear from Doug in Drummond? Didn't hear from Doug.
>     She said, of course, there was a lot of traffic after Butch died because they were so concerned for me. . . .
>     . . . [W]here are those so concerned friends now to say, I wasn't buying drugs? We didn't hear from any of that [sic]. I'd suggest it's because they've flown the coop. The Defendant is not there anymore. These aren't concerned friends. They're people who she was supplying.
>     . . . The Defendant knew that any one of those people could have been there . . . . Amber could have been here to say, yeah, I got in trouble for drugs, but, man, my mom never does drugs. They're not here because they can't say it. They're not here because they can't come in and testify that way and tell the truth.
>     If we look at all that, I think we have laid out a case for the four crimes that were charged. . . .
>     . . . .
>     Where was Amber to say, Uncle Randy is lying to you when [sic] says we sat around with my friends and light up whenever mom did. Because that's what happened. Probably with that red bong sitting in the front room when the detectives showed up.

¶28 As the presumption of innocence "surrounds the defendant at every step in the trial," *Gilbert*, 125 Mont. at 109, 232 P.2d at 341, the prosecutor was not at liberty to undermine the presumption during the State's closing argument. However, the prosecutor used this stage of the proceeding to repeatedly criticize Newman for failing to present witnesses to

11

corroborate her testimony. Additionally, the prosecutor asked the jury to consider this failure in rendering a verdict, stating "[t]hey're not here because they can't come in and testify that way and tell the truth. If we look at all that, I think we have laid out a case for the four crimes that were charged."

¶29 These arguments suggested to the jury that guilt could be determined, in part, based on Newman's failure to call witnesses. This suggestion directly contravened the presumption of innocence. Further, by asserting that Newman's defense lacked merit for her failure to call witnesses, the prosecutor's comments suggested that Newman had some obligation to present evidence. This suggestion also directly contravened the presumption of innocence, pursuant to which Newman had absolutely no obligation to prove any facts. Moreover, the prosecutor's argument improperly shifted the jury's attention from the State's substantive evidence to the lack of affirmative evidence presented by Newman. This further undermined the presumption of innocence and diminished the State's burden of proof in the mind of any juror who took this argument seriously.

¶30 The same portion of the prosecutor's closing argument which undermined Newman's constitutional right to the presumption of innocence, was also improper because it contained references to matters not in evidence. We have held that it is improper for a prosecutor to comment on evidence not of record during closing argument. *State v. Gladue*, 1999 MT 1, ¶ 14, 293 Mont. 1, ¶ 14, 972 P.2d 827, ¶ 14. Here, the prosecutor asserted that some of Newman's acquaintances and family members with knowledge relevant to the case were not at the trial because they had "flown the coop" or could not testify truthfully. However, there

12

was no evidence regarding the willingness of these individuals to appear at trial, and no evidence regarding their willingness to testify truthfully.

¶31    In *Berger v. United States* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, the United States Supreme Court discussed the special responsibility of a prosecutor and the harm potentially resulting from improper prosecutorial efforts.  The Court stated:

> [W]hile [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed.  Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger*, 295 U.S. at 88, 55 S.Ct. at 633.  Recognizing the special influence a prosecutor has with a jury based on his or her status as a representative of the State, I am reluctant to condone any prosecutorial argument that undermines the presumption of innocence. However, this Court will not presume that a defendant suffers prejudice from improper prosecutorial comments. *Gladue*, ¶ 27.  Rather, a defendant must demonstrate, based on the record, that the prosecutor's improper comments prejudiced his or her right to a fair trial. *Gladue*, ¶ 27.  In determining whether prejudice resulted, the prosecutor's improper comments must be viewed in the context of the case in its entirety. *Gladue*, ¶ 27.

¶32    Here, I conclude that Newman was prejudiced because the prosecutor aggressively suggested that the jury disregard the presumption of innocence, thereby creating a risk that she would be convicted on that basis.  The fact that the prosecutor did not explicitly state that

13

Newman was responsible for establishing her innocence does not alleviate the effect of this improper argument. Nor do proper jury instructions cure such an error. I simply can not excuse a prosecutorial argument that so forcefully contravenes a fundamental constitutional protection.

¶33 Accordingly, I conclude that Newman was denied a fair trial because the prosecutor's closing argument effectively undermined her constitutional right to the presumption of innocence as secured by the due process guarantee of the Montana Constitution.

¶34 That being said, I address Justice Warner's contention that "the arguments in question were not at all aimed at the presumption of innocence," but were "an attack on Newman's credibility." My opinion is based on the prosecutor's words as they appear in the transcript--the words which were spoken to the jury. The dissent, however, resorts to speculation about the prosecutor's intent, spinning the closing argument as a constitutionally harmless swipe at Newman's credibility. However, even if it were possible to accurately discern a pure motive behind the prosecutor's comments, I could not hold that it would cure the serious constitutional problem here. Regardless of where the prosecutor "aimed" with these comments, they struck at the very heart of a fundamental constitutional protection. No pure motive can serve to remedy such a violation. Thus, I focus on the actual words used.

¶35 I take exception to the dissent's baseless accusation that I have taken the prosecutor's comments "out of context." Perhaps this charge results from my refusal to inject the transcript with speculation regarding the prosecutor's motives. Of course, I have focused on the entirety of the contested comments in the context in which they were used. Further,

14

I have reviewed the closing arguments in full, and considered them in light of the trial as a whole. Indeed, it is the dissent that supplies the context--by way of speculation--which supports a different conclusion. Moreover, I can not envision a context that would justify the suggestion, as was made by the prosecutor, that a jury may legitimately consider a defendant's failure to present witnesses as a strike against him or her. This notion is absolutely contrary to the presumption of innocence.

¶36 My consideration of the context leads me to note that the dissent's position is undermined by the fact that Newman's counsel recognized the prosecutor's comments as an attack on the presumption of innocence, and responded accordingly in closing. As the dissent notes, Newman's counsel restated the prosecutor's comments and immediately responded by explaining the presumption of innocence. Hence, I am simply recognizing the same impropriety which defense counsel recognized during closing.

¶37 The dissent goes on to suggest that even if the prosecutor's comments were an attack on the presumption of innocence, defense counsel's closing argument, together with the jury instructions regarding the State's burden of proof, would provide a sufficient remedial effect. I can not agree. To take such a position would allow juries to be subjected to conflicting messages regarding the presumption of innocence. This, in turn, would force defendants to beg the jury to rely on the instructions rather than the prosecutor's arguments. Of course, defendants should not have to struggle for the right to be presumed innocent. That fight was waged, and won, long ago. *Estelle*, 425 U.S. at 503, 96 S.Ct. at 1692. As this Court has said, the presumption of innocence "is in effect the very thing against which the prosecution

is directed." *Martin*, 29 Mont. at 279, 74 P. at 727. Thus, a prosecutor must overcome the presumption by presenting persuasive evidence and arguments; not by suggesting that the defendant has some obligation to justify the presumption.

¶38 Moreover, to the extent that the closing argument can be construed as an attack on Newman's credibility, its status as such can not render it constitutionally valid. In other words, an attack on the presumption of innocence is not rendered acceptable just because it is also an attack on the defendant's credibility. It was the prosecutor's job to tailor any attacks on Newman's credibility so as not to undermine any of her fundamental constitutional rights.

¶39 The dissent also cites this Court's previous holding that it is proper for the prosecution to comment on conflicts and contradictions in testimony, as well as to comment on the evidence presented and suggest to the jury inferences which may be drawn therefrom. *Gladue*, ¶ 15. However, the prosecutor's suggestion that someone not present at trial might say something in contradiction to Newman's testimony simply does not qualify as a comment on conflicts or contradictions in testimony. Nor was this suggestion a comment on the evidence presented. Rather, it was a comment on evidence *not* presented at trial. As such, I do not find this precedent applicable.

¶40 Finally, I share the dissent's concern with limiting the use of plain error review. However, this Court must be mindful to employ a similar level of concern in evaluating alleged constitutional violations.

16

¶41 Justice Rice's dissent maintains that the prosecutor's argument was merely a comment regarding other individuals' failure to testify. Consequently, the dissent finds the prosecutor's comments acceptable under *State v. Rodarte*, 2002 MT 317, 313 Mont. 131, 60 P.3d 983, wherein we stated that "the prosecution is permitted to point out facts at issue which could have been controverted by persons other than the defendant, but were not." *Rodarte*, ¶ 14. The short portion of the prosecutor's argument which the dissent quotes could arguably be considered acceptable under *Rodarte* if viewed in isolation. However, I find *Rodarte* irrelevant when viewing the prosecutor's arguments in their entirety.

¶42 The dissent's analysis ignores pertinent parts of the trial transcript. First, it ignores the fact that the prosecutor repeatedly criticized Newman personally for failing to call witnesses to corroborate her testimony. The prosecutor argued Newman "knew that any one of those people could have been there," that she "had every opportunity to present whatever she wanted," and that she nonetheless failed to present numerous witnesses who could have corroborated her testimony. Second, the dissent's analysis ignores the fact that the prosecutor then proceeded to ask the jury to consider Newman's failure to call such witnesses in rendering a verdict, stating "[i]f we look at all that, I think we have laid out a case for the four crimes that were charged." These arguments placed unwarranted blame squarely on Newman for failing to present witnesses. Thus, I can not agree that this was merely an attack on Newman's testimony or an attack upon "the failure of persons to testify who could have controverted the State's evidence," as the dissent asserts.

17

¶43    The holding of *Rodarte* can only be decisive in this case if we ignore significant portions of the prosecutor's closing argument, and I will not do so.  Nor would I expand *Rodarte* so as to condone the prosecutorial argument at issue here.  The *Rodarte* rule, by its plain terms, simply does not give prosecutors license to suggest to a jury that a defendant has some duty to call witnesses to corroborate his or her testimony.  Nor can *Rodarte* be construed as a rule allowing prosecutors to ask a jury to consider such a failure as evidence adverse to a defendant.

¶44    As part of its analysis, the dissent asserts that Newman "had <u>not</u> relied upon her presumption of innocence--she had instead affirmatively offered an alternate explanation of the State's evidence."  I must respond to this statement because the dissent proffers it in a way which suggests that a defendant's decision to testify has some bearing on the protection provided by the presumption of innocence.  Particularly, it suggests that the presumption of innocence somehow had less force here because Newman did not "rely" upon it.  Further, it suggests that Newman had to choose between maintaining the full benefit of the presumption on one hand, and testifying in her own defense on the other hand.

¶45    Of course, we can only speculate as to whether Newman "relied" on the presumption of innocence.  But even if she and her counsel completely disregarded the presumption, its constraints upon the prosecution were not thereby rendered any less stringent.  While the dissent attaches some significance to Newman's decision to testify, it cites no authority for the notion that this fact should have some bearing on the analysis regarding the presumption of innocence.  I reject this notion, as it is well established that the presumption is overcome

18

only by proof beyond a reasonable doubt of every element of a charged offense. Section 46-16-204, MCA; *Howell*, 26 Mont. at 5, 66 P. at 292; *Martin*, 29 Mont. at 279, 74 P. at 727. Thus, there is nothing inconsistent in clinging steadfastly to the presumption of innocence while also testifying in one's own defense. To reason otherwise would be to create new legal precedent repugnant to the presumption of innocence.

¶46 Finally, the dissent claims that defense counsel's failure to object to the prosecutor's argument was a "choice to take the issue from the judge for his own purposes." Any knowledge the dissent may possess regarding defense counsel's thought process at trial is based on pure speculation and is not properly considered by this Court, as the record before us discloses nothing in this regard. Moreover, even if it were possible to accurately divine defense counsel's motives, the dissent cites no authority for the proposition that such an improper intent should impact the analysis regarding the presumption of innocence.

### CONCLUSION

¶47 In conclusion, I note that Newman claims her trial counsel provided ineffective assistance when he failed to object to the prosecutor's closing argument and failed to offer an accomplice jury instruction. Having already discussed the dispositive issue, I will not address these arguments. Counsel can request a proper accomplice instruction in the new trial or refrain from doing so after consulting with Newman.

¶48 Having concluded that the prosecutor's closing argument deprived Newman of a fair trial, I concur in our decision to reverse and remand for a new trial.

/S/ JAMES C. NELSON

19

Justice Patricia O. Cotter joins in the special concurrence of Justice James C. Nelson.

/S/ PATRICIA O. COTTER

Justice W. William Leaphart specially concurs.

¶49 I would reverse the conviction due to defense counsel's ineffective assistance in failing to request an accomplice jury instruction pursuant to § 26-1-303(4), MCA.

¶50 Section 26-1-303(4), MCA, requires that, when proper, the court must instruct the jury that "the testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust." The State argues that this provision does not apply to Newman's case because Jordan did not act as an accomplice. Section 45-2-302(3), MCA, states that "[a] person is legally accountable for the conduct of another when either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense." In addition, this Court defines "[a] true accomplice [as] one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime . . . . One may become an accomplice by being present and joining in the criminal act, by aiding and abetting another in its commission." *State v. Nordahl* (1984), 208 Mont. 513, 517, 679 P.2d 241, 243 (citations omitted).

¶51 Jordan lived with Newman and testified to selling drugs on her behalf. Initially, Jordan even claimed all the drugs belonged to him; a story he did not change until cutting a deal with the State to testify against Newman in exchange for a suspended sentence. In

knowingly selling drugs on Newman's behalf, Jordan satisfies the statutory definition of "a person legally accountable" and this Court's definition of an "accomplice."

¶52    Newman argues that she received ineffective assistance because her counsel failed to request an accomplice jury instruction.  "A criminal defendant is denied effective assistance of counsel if: (1) his counsel's conduct falls short of the range reasonably demanded in light of the Sixth Amendment of the United States Constitution; and (2) counsel's failure is prejudicial."  *State v. Rose*, 1998 MT 342, ¶ 12, 292 Mont. 350, ¶ 12, 972 P.2d 321, ¶ 12 (citations omitted).   *See also Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  The *Strickland* test "requires the defendant to establish prejudice by demonstrating that, but for counsel's errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome, but it does not require that a defendant demonstrate that he would have been acquitted."  *State v. Kougl*, 2004 MT 243, ¶ 25, 323 Mont. 6, ¶ 25, 97 P.3d 1095, ¶ 25 (quotations and citations omitted).

¶53    Before examining an ineffective assistance of counsel claim on direct appeal, we generally look to the record to see whether we can answer "why" counsel did or did not perform as alleged.  *Kougl*, ¶ 14.  If we can answer "why," we will address the issue on appeal.  If the claim is based on matters outside the record, we will refuse to address the issue on appeal and allow the defendant to file a postconviction proceeding.  *Kougl*, ¶ 14; *State v. Grixti*, 2005 MT 296, ¶ 27, 329 Mont. 330, ¶ 27, ___ P.3d ___, ¶ 27.  "Sometimes, however, it is unnecessary to ask 'why' in the first instance"—for example, "when counsel

21

is faced with an obligatory, and therefore non-tactical, action." *Kougl*, ¶ 15. In such a case, "the question is not 'why' but 'whether' counsel acted." *Kougl*, ¶ 15. In my view, the circumstances of Newman's trial qualify as such a case. The prosecution primarily relied on testimony from Newman's brother, Randy Jordan, at trial. Initially, the State charged Jordan with criminal possession of dangerous drugs after police searched Newman's home and Jordan claimed ownership of all of the drugs uncovered. Before the trial, however, Jordan, looking at thirty years in prison, agreed to testify against Newman in exchange for thirty years of probation. Pursuant to this agreement, Jordan testified that the marijuana in Newman's house belonged to Newman, that she sold marijuana frequently, and that he too sold drugs on her behalf. A review of the trial record provides no explanation as to why defense counsel did not ask for an accomplice jury instruction with regard to Jordan's testimony. Given the importance of Jordan's testimony to the State's case, and the significant benefit he received by testifying against his sister, the more appropriate question is *whether* counsel acted. In light of Jordan's alleged complicity in Newman's conduct, defense counsel had an obligation to request the instruction that the jury view Jordan's accomplice testimony with suspicion.

¶54    If, for tactical reasons, counsel believes such an instruction would be inappropriate, counsel should make a record of that position.[1] In the absence of a strategic reason being

---

[1]Although defense counsel is not normally required to make a record of why he or she is not requesting a jury instruction, such a procedure is logical when a particular instruction, aimed at protecting the defendant, is statutorily required in "appropriate" circumstances. Section 26-1-303, MCA.

apparent on the record or a statement on the record from defense counsel specifically declining such an instruction, the language of § 26-1-303(4), MCA, requires that when a witness purports to have been an accomplice of the accused, effective defense counsel must request an accomplice instruction.

¶55 In *Kougl* we faced the same issue presented here—that is, whether defense counsel's failure to ask that the jury be instructed to view an accomplice's testimony with suspicion constituted ineffective assistance of counsel. We held that since the State's case against the defendant was largely based on the credibility of three accomplices, "trial counsel failed to use the law to strike at the heart of the State's case" by not requesting the accomplice jury instruction. *Kougl*, ¶ 20. In light of this failure, Kougl experienced prejudice "because the instructions would have conveyed to the jurors that the law commanded them to view the State's crucial evidence with distrust such that there is a reasonable probability they would have arrived at a different outcome." *Kougl*, ¶ 26. We concluded that "trial counsel could have no plausible explanation for not asking for instructions on accomplice testimony," and therefore her performance was deficient, satisfying the first prong of the *Strickland* test. *Kougl*, ¶ 24. In addition, we noted that Kougl's trial counsel further failed him by not requesting an instruction that such testimony must be corroborated pursuant to § 46-16-213, MCA. "The corroborating evidence need not be robust in such a situation, but it must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged." *Kougl*, ¶ 21 (citations omitted).

¶56 It should be noted that in *Kougl* we distinguished *State v. Johnson* (1993), 257 Mont. 157, 848 P.2d 496, 499, a case involving the same issue: whether counsel incorrectly failed to request a jury instruction providing that accomplice testimony must be viewed with distrust. We determined in *Kougl* that because "Johnson claimed that he was not at the scene of the crime, . . . asking the jury to view his accuser as an 'accomplice' would contradict this defense"; thus we held that a record-based justification existed for why Johnson's counsel did not ask for an instruction on accomplice testimony, whereas no such record-based justification existed in *Kougl*. *Kougl*, ¶ 18 (citing *Johnson*, 257 Mont. at 163, 848 P.2d at 499). I think we need to clarify the *Johnson* rationale. To hold that an accomplice instruction is inappropriate when a defendant maintains his innocence is illogical. Because instructions only come into play at trial and no trial occurs unless the defendant maintains his innocence, under the *Johnson* rationale, an accomplice instruction would never be strategically appropriate, as it would always contradict the assertion of innocence. The unwritten assumption in *Johnson* is that a defendant who requests an accomplice instruction admits to having committed a criminal act in concert with th*e accomplice.*[2] In my view, however, requesting an accomplice instruction in fact supports a defendant's position of innocence by directing the jury to view with distrust the accusations of a witness who purports to have acted in concert. I would therefore qualify the *Johnson* rationale and

---

[2]This concern assumes that the instruction is couched in terms of an "accomplice." There is, however, no need to use the offending term "accomplice" in the jury instruction. Notably, the statute at issue does not use the term "accomplice." Rather, it speaks in terms of a person "legally accountable." Section 26-1-303(4), MCA.

require, pursuant to § 26-1-303(4), MCA, that when a witness purports to have been an accomplice, defense counsel must request an accomplice instruction or state on the record that, for tactical reasons, the defendant does not want the instruction given; in the words of § 26-1-303, MCA, counsel must make a record that, given the testimony, the case at hand is not a "proper occasion" for such an instruction. *State v. Hall*, 2003 MT 253, ¶ 30, 317 Mont. 356, ¶ 30, 77 P.3d 239, ¶ 30.

¶57 With regard to this case, Jordan's testimony that he helped Newman sell drugs qualified him as a person "legally accountable for the acts of the accused." Section 26-1-303(4), MCA. Given the importance of Jordan's testimony in convicting Newman, trial counsel had an obligation to request an accomplice instruction directing the jury to view Jordan's testimony with distrust. If the jury had received such an instruction, as well as been directed to find corroborating evidence for Jordan's testimony, there is a reasonable probability it would have returned a not guilty verdict. In accord with our decision in *Kougl*, I can discern no tactical advantage to the trial counsel's failure to request the appropriate accountability jury instructions.

¶58 I would reverse the conviction and remand for a new trial.

/S/ W. WILLIAM LEAPHART

Justice Brian Morris joins the specially concurrence of Justice Leaphart.

/S/ BRIAN MORRIS

25

Justice Jim Rice dissenting.

¶59 Reversal of this matter for the reasons stated in Justice Nelson's opinion is unnecessary and condones abuse of the legal system. I dissent.

¶60 In *State v. Rodarte*, 2002 MT 317, 313 Mont. 131, 60 P.3d 983, we addressed the permissible scope of a prosecutor's closing argument and held:

> While it is improper for the prosecution to comment on the failure of a defendant to testify on his own behalf, the prosecution is permitted to point out facts at issue which could have been controverted by persons other than the defendant, but were not.

*Rodarte*, ¶ 14. Here, notwithstanding defense counsel's perception, the prosecutor did not comment on the *Defendant's* failure to testify, but rather the failure of "persons other than the defendant" to testify.

¶61 This distinction is further understood when the context of the prosecutor's comments is considered. The prosecutor had offered evidence of the traffic to and from Defendant's home in support of the drug distribution charges. To defeat this evidence, the Defendant testified that these frequent visits were made by well-wishers who were giving her support in her time of bereavement. Thus, the Defendant had <u>not</u> relied upon her presumption of innocence—she had instead affirmatively offered an alternate explanation of the State's evidence. It was this proffered defense which the prosecutor commented upon, including the failure of those in Defendant's household to controvert the State's facts:

> We did not hear from **Amber**, her daughter. We did not hear from **Mike**, her son. We did not hear from **Miranda**, the other girl who lived there for the last three years. George Garcia, we didn't hear from **George Garcia**. Did we hear from Doug in Drummond? Didn't hear from **Doug**. [Emphasis added.]

27

Thus, arguably, the prosecutor's attack was not made upon Defendant's presumption of innocence, but upon the defense and testimony which the Defendant had affirmatively offered, and the failure of persons to testify who could have controverted the State's evidence.

¶62   These circumstances illustrate the impropriety of exercising plain error review in this case. Defense counsel elected not to object to the prosecutor's closing for a reason: so he could use the prosecutor's comments against the State during his own closing argument. Thus, he sat quiet during the prosecutor's closing, when an objection would have immediately brought the matter to the judge's attention, and instead sought to discredit the State's case by raising the issue in closing. If it would have worked, and the jury had acquitted, this case would not be before us.

¶63   However, it failed, and now Defendant wants to have her cake and eat it too. This Court should not countenance such manipulations and abuse of the legal system. The trial judge could well have addressed the problem at the time, but it was defense counsel's choice to take the issue from the judge for his own purposes. When a defendant participates in trial error, he cannot then challenge the error on appeal. "We will not put a district court in error for an action in which the appealing party acquiesced or actively participated." *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32 (citing *State v. Clay*, 1998 MT 244, ¶ 24, 291 Mont. 147, ¶ 24, 967 P.2d 370, ¶ 24).

¶64   This dissent is criticized as based on "pure speculation." *See* ¶ 46. To the contrary, we need not speculate that the defense counsel was aware of the presumption of innocence

issue—counsel used the issue in his closing. We need not speculate that defense counsel decided not to object to the prosecution's closing—the record clearly demonstrates that no objection was made. We need not speculate that defense counsel used the issue to attempt to persuade the jury to acquit the defendant—the record clearly illustrates this as well. This issue was not properly preserved for appeal because defense counsel chose instead to gamble with it at trial. Indeed, we need only ask why plain error review should be exercised in a situation in which the error is not "plain," but, rather, where the defense clearly used the issue for its own purposes at trial and now seeks to avoid the consequences of that decision on appeal.

¶65 I now turn to Justice Leaphart's concurring opinion, which concludes that reversal is appropriate because "defense counsel had an obligation to request the instruction that the jury view Jordan's accomplice testimony with suspicion." ¶ 53.

¶66 Section 26-1-303, MCA (emphasis added), provides that the "jury is to be instructed by the court *on all proper occasions*" that the testimony of "a person legally accountable for the acts of the accused" is to be viewed with distrust. We held in *State v. Johnson* (1993), 257 Mont. 157, 848 P.2d 496, that the plain wording of the statute does not require this instruction to be given in every case involving an accomplice, and overruled the contrary holding in *State v. Laubach* (1982), 201 Mont. 226, 653 P.2d 844, as conflicting with the statute. *Johnson*, 257 Mont. at 162-63, 848 P.2d at 499. We recently explained in *Kougl* why an accomplice instruction was not appropriate in *Johnson*:

> [I]n *Johnson* there was a record-based justification for not asking for an instruction on accomplice testimony. Johnson claimed that he was not at the

29

scene of the crime, and asking the jury to view his accuser as an "accomplice" would contradict this defense. *Johnson*, 257 Mont. at 163, 848 P.2d at 499. Therefore, there was a tactical reason for not asking for the jury instruction. It was proper for this Court to ask "why" and then answer that question from the record.

*Kougl*, ¶ 18. Concluding that Kougl's trial counsel "could have no plausible explanation" for failing to request an accomplice instruction under the evidence in that case, we distinguished *Johnson* and reversed Kougl's conviction. *Kougl*, ¶¶ 24, 27.

¶67 The concurring opinion suggests that we revisit *Johnson*, believing its rationale "illogical," because "an accomplice instruction would never be strategically appropriate, as it would always contradict the assertion of innocence" by a defendant who goes to trial. ¶ 56. However, I believe this case illustrates well why the *Johnson* rule should be retained, and that there is clear reason why the statute does not require the instruction to be given in all such cases.

¶68 First, Newman and Jordan were not charged with the same offenses at the time of trial. The concurring opinion points to Jordan's testimony that he helped Newman sell drugs in an effort to link Jordan to the charges against Newman for criminal distribution of dangerous drugs and possession of drugs with intent to distribute. However, Jordan was charged with theft, drug possession, possession of drug paraphernalia and aggravated burglary, none of which involved distribution of or the intent to distribute drugs. Thus, the parties were not accomplices by virtue of the respective charges filed against them.

¶69    Second, and more critically, is the evidence.  The sum total of Jordan's testimony upon which Newman and the concurring opinion rely for the proposition that Jordan "helped Newman sell drugs," ¶ 57, consists of the following:

    Defense Counsel:  And were you selling drugs?

    Jordan:  No, not really, I don't think.  Maybe once or twice for her.

¶70    This brief, ambiguous comment is insufficient to support an assertion that Jordan is "legally accountable for the acts of the accused."  Section 26-1-303(4), MCA.  Contrary to Newman's characterization, Jordan testified that he did not sell any drugs, or, at best, that "maybe" he had, but was not sure.  How different this case is from *Kougl*, where we noted that "[t]he parties are agreed that Loney, Pool, and Fassler were accomplices" with Kougl, *Kougl*, ¶ 20, and, indeed, the evidence overwhelmingly supported that conclusion.  *Kougl*, ¶ 8.  "[A] criminal defendant is entitled to jury instructions that cover every issue or theory having support in the evidence."  *State v. Beavers*, 1999 MT 260, ¶ 23, 296 Mont. 340, ¶ 23, 987 P.2d 371, ¶ 23.  Obviously, the converse is not true:  a defendant cannot be forced to bear an instruction which is not supported by the evidence.

¶71    Thirdly, there is a legitimate, strategic component to the giving, and thus, the requesting, of this instruction.  Here, an accomplice instruction would appear to have been completely inconsistent with Newman's defense.  She testified, and her theory was, that the drugs and paraphernalia seized in the house were not hers, and that Jordan's testimony about her sale of drugs was false:

    Defense Counsel:  . . . So it's your testimony that none of this drug
    paraphernalia is yours; is that correct?

31

Newman:  That is correct.

Defense Counsel:  What about the drugs themselves?

Newman:  No, sir, they are not mine.

Defense Counsel:    Were you using those drugs or selling those drugs, or did you participate with other people in selling those drugs for money?

Newman:  No, I have never sold drugs.

. . . .

Defense Counsel:  Now, you've heard Randy [Jordan]'s testimony that he said he saw you sell drugs to the people coming into the house or that you would drive somewhere to locations and sell drugs; you've heard that testimony?

Newman:  Yes, I have.

Defense Counsel:  Is that true?

Newman:  No, it is not.

Defense Counsel:  Did you ever go with [Jordan] anywhere to sell drugs or -

Newman:  No, sir.

¶72    Given this testimony and Newman's theory, it would have been supreme incongruence for Newman to ask that the jury be instructed to view Jordan's testimony with distrust for being legally accountable for acts which Newman adamantly claimed never occurred.  Unlike the record in *Kougl*, the evidence here presented a legitimate strategic reason for declining to request the instruction.  Alternatively, Newman's trial counsel could have requested the accomplice instruction for purposes of attacking Jordan's testimony.  However, that decision would have required taking a risk—that the jury would recognize the

incongruence between Newman's argument that Jordan was an accomplice and her theory that the acts had not occurred. "[I]t is not proper to give an accountability instruction [based upon § 26-1-303(4), MCA] where it is not supported by the evidence *and is inconsistent with the defendant's claim of innocence*." *State v. Hall*, 2003 MT 253, ¶ 30, 317 Mont. 356, ¶ 30, 77 P.3d 239, ¶ 30 (emphasis added). On matters of strategy, we cannot second-guess counsel. "[W]e will not find ineffective assistance of counsel . . . in counsel's tactical decisions." *Weaver v. State*, 2005 MT 158, ¶ 25, 327 Mont. 441, ¶ 25, 114 P.3d 1039, ¶ 25.

¶73 The concurring opinion's statement that "[t]o hold that an accomplice instruction is inappropriate when a defendant maintains his innocence is illogical" (¶ 56) may be correct when viewed in isolation. However, the statement does not fully circumscribe the law. Under the statute and our cases, the accomplice instruction is inappropriate when it is inconsistent with the particular theory or evidence a defendant presents in support of his claim of innocence. In those cases, requesting the instruction becomes a tactical matter. In *Kougl*, the case as presented left no room for a tactical decision, and the instruction was appropriate. Here, the opposite was true.

¶74 I would affirm.

/S/ JIM RICE

33

Justice John Warner dissents.

¶75 I respectfully dissent from the Court's decision to remand this case for a new trial. I agree with the dissent of Justice Rice concerning Justice Leaphart's concurring opinion commencing at ¶ 65. Relating to Justice Nelson's opinion, in my view it takes the prosecutor's closing argument out of context, and then goes on to erroneously undertake a plain error review of the case to reach its conclusions.

¶76 In considering the appropriateness of plain error review, the Court ignores the principle that we do not lightly excuse the failure to raise a contemporaneous objection but utilize plain error review sparingly. *Finley*, 276 Mont. at 138, 915 P.2d at 215. The Court justifies its use of plain error review by stating that a failure to address the alleged improper closing argument by the prosecution would bring into question the fundamental fairness of Newman's trial. While this Court has held that utilizing plain error review is proper when a failure to review the claimed error "may leave unsettled the question of the fundamental fairness of the trial," *Finley*, 276 Mont. at 137, 915 P.2d at 215, I cannot agree that the trial in the present case was fundamentally unfair.

¶77 While the prosecution's comments could have been more artfully phrased, the transcript shows the arguments in question were not at all aimed at the presumption of innocence. They were an attack on Newman's credibility. Newman testified at the trial. Thus, the prosecution could properly comment on her credibility. We have previously found it proper for the prosecution "to comment on conflicts and contradictions in testimony, as well as to comment on the evidence presented and suggest to the jury inferences which may

34

be drawn therefrom." *State v. Daniels*, 2003 MT 247, ¶ 26, 317 Mont. 331, ¶ 26, 77 P.3d 224, ¶ 26 (quoting *State v. Gladue*, 1999 MT 1, ¶¶ 14-15, 293 Mont. 1, ¶¶ 14-15, 972 P.2d 827, ¶¶ 14-15). The prosecution's argument was that Newman's version of events was not credible, and Newman's failure to call certain witnesses implied that her version of events was not credible. As such, when taken in context, the prosecution's closing was not improper.

¶78 Even assuming, *arguendo*, that the prosecution's closing was an attack on the presumption of innocence, which it was not, Newman has failed to establish any resulting prejudice. This Court has previously held that the burden is on the defendant to demonstrate, from the record, that improper comments by the prosecution prejudiced the defendant's right to a fair and impartial trial. *Gladue*, ¶ 27. In the present case, while Newman's counsel failed to object to the prosecution's closing, he clearly pointed out to the jury that Newman was presumed innocent and had no obligation to present any witnesses. He argued:

> Mr. Fulbright [the prosecutor] brought up where are the other witnesses, where is Amber, where are these people that come to the house if they were supporting them. If you remember one thing about the Rices, they both testified that they never saw anyone using drugs at the house and they never saw any drug deals going on in the house. And as Mr. Fulbright indicated, it sounds as if they're watching this house pretty closely. I mean, they're taking down notes, they're writing down license plate numbers to investigate these people. And Mr. Fulbright says, well, where are these people now? Well, it is not the Defendant's burden. It's not our burden to prove that my client is innocent. It's the State's burden to produce those types of witnesses that may implement [sic] my client in a crime. It's the government's burden to prove each and every element beyond a reasonable doubt. That's the most important principal [sic] of our constitution. And that Sandra is innocent until proven guilty and you all assured me you will do that. And I believe you still will.

¶79 This argument by Newman's counsel, as well as the jury instructions that clearly state it is the State's burden to prove each element of the alleged offense beyond a reasonable doubt, make it clear that Newman received a fair trial. Considering the entire record, Newman's fundamental constitutional rights are not implicated in this case, the fundamental fairness of the trial is not called into question, and the integrity of the judicial process is not compromised.

¶80 As the prosecution's closing argument, taken in context, was not improper, and the record reflects that Newman was not prejudiced by such argument, the Court should not undertake plain error review. I would affirm the conviction and dissent from our refusal to do so.

/S/ JOHN WARNER

Chief Justice Karla M. Gray, dissenting.

¶81    I respectfully dissent from the Court's decision to reverse and remand for a new trial.

¶82    With regard to Justice Nelson's opinion, it is my view the various opinions in this case illustrate that whether prosecutorial misconduct actually occurred during closing argument is a close question. Having read the entire transcript, it is clear to me that the case boiled down to a question of whether the jury believed Randy Jordan or whether it believed Sandra Jordan Newman, his sister and the defendant in this case. Indeed, that was the thrust of defense counsel's opening statement and his closing argument. And without a doubt, Jordan's credibility was brought into clear focus by both the State and defense counsel. The same was true of defendant Newman. Both the State and the defense presented other witnesses in their cases-in-chief, but Jordan and Newman were the "battleground" in this case. His--the State's--theory was that Newman was responsible for the drugs and paraphernalia; her theory was that either Jordan and/or her daughter Amber, who was in a group home at the time of trial because of her drug activities, was responsible. In this "big picture" context, it is reasonable to argue that the prosecution merely commented on gaps in the defense case by briefly referring to witnesses who did not appear. It also is reasonable to argue that the prosecution's references touched on the presumption of innocence.

¶83    Even assuming, however, that prosecutorial misconduct occurred, my review of the record convinces me that it was minor in the context of the overall case and does not rise to the level of reviewable plain error. The trial in this matter lasted over one and one-half days,

37

18 witnesses were called and recalled, and scores of State exhibits were admitted into evidence.

¶84 Closing arguments--by the State and defense counsel--cover a mere 37 pages of a transcript containing over 475 pages. In its first closing argument, the prosecution's references to witnesses not called covers, at most, 23 lines of an 18-page argument. Experienced defense counsel's closing focused primarily on credibility--as had his opening statement--and pointed the finger at Jordan and/or Amber as the responsible parties. From a 15-page closing argument, one can extract, at most, 33 lines of argument relating to the State's "where are they?" references, primarily hammering on the State's burden to prove its case beyond a reasonable doubt. The prosecution did not refer to these matters again in its final closing argument.

¶85 Appellate counsel understandably--in the absence of any objection by trial counsel to the remarks by the prosecution--requests plain error review pursuant to *Finley*, our seminal case on that subject, and *State v. Sullivan* (1996), 280 Mont. 25, 927 P.2d 1033. We have stated on numerous occasions that such review should be exercised only sparingly. *See, e.g., State v. Gray*, 2004 MT 347, ¶ 13, 324 Mont. 334, ¶ 13, 102 P.3d 1255, ¶ 13; *State v. Godfrey*, 2004 MT 197, ¶ 22, 322 Mont. 254, ¶ 22, 95 P.3d 166, ¶ 22; *State v. Rinkenbach*, 2003 MT 348, ¶ 13, 318 Mont. 499, ¶ 13, 82 P.3d 8, ¶ 13; *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, ¶ 20, 77 P.3d 224, ¶ 20. Indeed, the *Finley* test for plain error review is that such review should be exercised when failing to do so "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the

trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 915 P.2d at 215. On the record before us, and in light of appellate counsel's candid observation that "points made during closing of counsel may be missed or quickly forgotten[,]" I simply am not persuaded that plain error review is warranted here because I am not convinced Newman's constitutional rights were violated and, if they were, I do not believe any violation impacted on the fundamental fairness of the trial.

¶86    I also am not persuaded that *Sullivan* advances Newman's cause. *Sullivan* is a classic case of prosecutorial comment on a defendant's post-*Miranda* silence in which we applied plain error review on appeal. There, the prosecutor commented on the defendant's post-*Miranda* silence in his opening statement, during his case-in-chief and during his closing argument, all without objection from defense counsel. *See Sullivan*, 280 Mont. at 29-31, 927 P.2d at 1036. Here, Newman voluntarily spoke with law enforcement during the search of her home, voluntarily took the stand in her own defense and called other witnesses on her behalf. The *Sullivan* "silence" case has no application or relevance here. I would decline to apply plain error review and affirm the District Court on appeal.

¶87    I also join in Justice Rice's dissent from Justice Leaphart's opinion determining that ineffective assistance of counsel occurred regarding the accomplice instruction and reversing and remanding for a new trial. In my view, Justice Leaphart's legal analysis is flawed, as Justice Rice's dissent makes clear. Further, nothing in § 26-1-303(4), MCA, even suggests that criminal defense counsel must make a record regarding why a jury instruction is *not* required. The burden which would be placed on criminal defense counsel should the Court itself start such micro-management of their trial strategies and performance is, to say the

very least, unwarranted. Finally, I would conclude that Newman's other claim of ineffective assistance--namely, the lack of objection to the prosecutor's comments in closing argument-- be pursued, if at all, via a postconviction relief proceeding.

¶88    I dissent.

/S/ KARLA M. GRAY